COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Annunziata and Clements
Argued at Alexandria, Virginia


HUGO ALEXANDER SANCHEZ
                                              OPINION BY
v.    Record No. 2969-01-4        JUDGE ROSEMARIE ANNUNZIATA
                                            AUGUST 26, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Gaylord L. Finch, Judge

        Jeanne E. Klapps, Senior Assistant Public
        Defender (Office of the Public Defender, on
        brief), for appellant.

        John H. McLees, Senior Assistant Attorney
        General (Jerry W. Kilgore, Attorney General,
        on brief), for appellee.


     Hugo Sanchez was charged with three counts of failing to

stop after an accident, felony hit and run, in violation of Code

§ 46.2-894.  The jury convicted Sanchez of one of those counts

and fixed his punishment at four years in prison.  Sanchez now

appeals, contending the trial court erred in 1) refusing to

provide him with additional funds for an expert witness, 2)

denying three motions for mistrials, 3) striking three potential

jurors for cause and 4) denying his motion to exclude evidence

of a prior carjacking.  Sanchez also contends the evidence was

insufficient to prove his guilt beyond a reasonable doubt.  For

reasons that follow, we reverse the conviction.

## I.  Background

Hugo Sanchez was tried for felony hit and run and carjacking in two separate trials.  Prior to both trials, he moved in limine to have the trial court order the Commonwealth not to refer to the carjacking during the hit-and-run trial. The trial court denied the motion.

During the trial on the hit-and-run charge, the Commonwealth's evidence showed that at 5:50 a.m. on November 23, 1999, Helen Unangst was seized at gunpoint by Hugo Sanchez in the parking lot of her Vienna apartment and forced to surrender the keys to her car.  Sanchez then got into Unangst's green 2000 Honda Accord and drove away.  Unangst later identified her car as one towed in by the police because it had been in a "wreck."

Two days later, on the evening of November 25, 1999, Sandra Contrevas drove her boyfriend, Rodrigo Omar Ramirez-Villatoro, and his friend, Johnny Rigaberto Cerrato-Marquez, to a party at an apartment complex in Maryland.  Contrevas waited briefly outside in the car while the men went in to "check out" the party and determine if they wanted to stay.  While she waited, Contrevas saw two Hispanic men come out of the apartment complex, walk by her car, get into a new green Honda Accord parked behind her car, and drive past her.  The men appeared to be 23 or 24 years old.  Contrevas identified Hugo Sanchez as the driver of the Honda.  Cerrato-Marquez and Ramirez-Villatoro decided to stay at the party, and Contrevas went home without

-

them.  She never heard from Ramirez-Villatoro or saw him alive again.

Cerrato-Marquez testified that he had "like one" beer before he arrived at the party, but had not smoked marijuana. He saw Sanchez at the party at approximately 10:00 p.m. and remembered that Sanchez was drinking.  Ramirez-Villatoro and Cerrato-Marquez were also drinking at the party.

Sanchez later left the party in a vehicle, together with Cerrato-Marquez, Sanchez's brother, Victor Sanchez, decedent Rodrigo Omar Ramirez-Villatoro, and decedent Jose Israel Ramirez-Alvarez.[1]  At trial, Cerrato-Marquez identified Sanchez as the driver of the vehicle.  The men drove to a liquor store, where three of the passengers bought beer.

Cerrato-Marquez testified that, with Sanchez still driving, the men left the liquor store, drinking beer and smoking marijuana in the car.  Cerrato-Marquez was sitting directly behind Sanchez, on the left side of the rear passenger seat. Cerrato-Marquez described the moments before the accident and said he believed someone was following them:  "I recall just like screaming, you know, they're following us, and people are screaming, you know, like shut-up and everything.  And then what

---

[1] Cerrato-Marquez testified there were six people in the car; however, he named only five passengers and the record indicates only five.

-

happened, we got a curve and the car just fly.  I just remember the impact, you know, boom-boom."

Cerrato-Marquez remembered hearing voices after the accident saying "he's dead, he's dead."  He also recalled people pulling him out of the car and putting him down on "something."  He later woke between four and five o'clock in the morning, alone "in just bushes of this creek," thinking someone had beaten him and left him there.  He saw no one at the car, and he did not notice the bodies remaining inside the car.  He walked to a gas station and called his mother and a cab to take him home.  A gas station employee, Mitra Dalil, testified that Cerrato-Marquez had a small amount of blood on his hand and forehead when he came into the station.

Donald Lee, a Virginia State Police Motorist Assistant, found the car at approximately 11:30 a.m. on Friday, November 26, 1999.  His dispatcher had told him to go to the location "to check for debris in the road."  There was no evidence presented at trial that Lee responded to the site as the result of an accident report.  He found the car stopped on the other side of a guardrail on the Dulles Connector Road.  When Lee looked over the guardrail, he saw two people inside the car who appeared to be dead.

Virginia State Trooper Anthony Conte arrived on the scene shortly after Lee and found the two dead bodies in the car. They were later identified as Jose Israel Ramirez-Alvarez and

-

Rodrigo Omar Ramirez-Villatoro. Ramirez-Alvarez was seated in the front passenger seat, and Ramirez-Villatoro was seated in the back seat.

Forensic technicians found a shoe impression on the inside of the driver's side of the front window. The impression was consistent with a right shoe belonging to Sanchez, in outsole design, approximate size, and wear. However, the laboratory could not definitively identify Sanchez's shoe as the shoe that had left the impression.

DNA analysis of bloodstain samples taken from the car revealed that Sanchez's blood was found on the inside of the driver's door. Stains of Cerrato-Marquez's blood were found on the guardrail and steering wheel airbag. A mixture of Cerrato-Marquez's blood and the blood of an unidentified individual were found on the front left headrest and seat.

To refute the Commonwealth's evidence that he was the driver of the car, Sanchez offered the alibi testimony of Israel Montilla and Rosily Sanchez. Both men testified that, on November 25, 1999, they drove into Washington, D.C. between 10:40 p.m. and 11:00 p.m. and picked up Sanchez. Montilla and Rosily Sanchez stated that the three men then went to a party at Montilla's apartment in Prince George's County, Maryland, where they stayed until approximately 2:15 a.m. Rosily Sanchez stated that he then drove Sanchez home.

-

Several months prior to trial, Sanchez moved the court for funds to employ a DNA expert witness and a DNA expert investigator in order to evaluate the Commonwealth's DNA evidence and the processes by which it was developed. The trial court granted Sanchez $3,000 to engage DNA consultants as he saw fit.

Before the trials began, Sanchez moved the court for additional funds to pay for his expert witness to testify at trial, stating the expert witness' pretrial evaluations had depleted the previously allotted funds, that the expert would need no more than one-half day to present his testimony, and that his court appearance fee would be $250 per hour or a maximum of $1,750 per day. The reasonableness of the expert witness' expected fees was not contested.

Counsel represented to the court that the testimony would be material to the defense. However, he initially declined to reveal the substance of the expected testimony unless permitted to do so in an ex parte proceeding, which the Commonwealth opposed. The court denied the motion, stating, "I'm not inclined to have the motion to be made ex parte. So unless there's something further, the Court is going to deny your motion for additional funds." Defense counsel responded to the court's denial of Sanchez's motion by stating that the expert would testify that there were errors in the way the DNA

-

procedures were followed and, therefore, that the DNA results would be challenged. Sanchez offered the following proffer:

> [W]e . . . [had the expert] go over the [DNA] documents from the state laboratory. There are approximately four or five inches worth of documents that he has reviewed. In that documentation, he has noticed that there were errors in the way that the DNA procedures were followed, that there were errors in the way the examination was done, which could have had a significant impact in the results of the DNA.
>
> So therefore the DNA results that the Commonwealth is going to put forth as being scientifically valid could be questioned, will be questioned, to an extent by our expert witness and therefore the Commonwealth's only other evidence, other than the DNA which we submit would not be credible, would be testimony of one witness.
>
> So it is certainly material for the defense as to whether Mr. Sanchez was in that car for those reasons.

The trial court denied Sanchez's motion. Sanchez was convicted of failing to stop after an accident, in violation of Code § 46.2-894, and was sentenced to serve four years in prison. This appeal followed.

## II. Denial of Motion for Additional Funds For Expert Witness

On appeal, Sanchez contends the trial court erred in refusing his request for additional funds for his expert witness on the ground that he established a particularized need for the funds. We agree.

-

The United States Supreme Court established an indigent defendant's right to the assistance of an expert at the state's expense in Ake v. Oklahoma, 470 U.S. 68 (1985).  Citing the Due Process Clause of the Fourteenth Amendment, the Court reasoned:

> Meaningful access to justice has been the consistent theme of these cases.  We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense.  Thus, while the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, it has often reaffirmed that fundamental fairness entitles indigent defendants to "an adequate opportunity to present their claims fairly within the adversary system."  To implement this principle, we have focused on identifying the "basic tools of an adequate defense or appeal," and we have required that such tools be provided to those defendants who cannot afford to pay for them.

Id. at 77 (internal citations omitted).

The Court in Ake applied a three-part test to determine whether the defendant in that case should have been provided the services of a state-funded psychiatrist to assist with the insanity defense he raised:  1) the defendant's private interest in diminishing the risk of erroneous conviction; 2) the state's economic considerations, and 3) the risk of error if the case were to proceed in the absence of the requested assistance.

-

Id. at 78.  "When the defendant is able to make . . . a threshold showing to the trial court [that the issue for which he seeks expert assistance] is likely to be a significant factor in his defense" and that he will be prejudiced were the request to be denied, due process requires the appointment of an expert at state expense.  Id. at 82-83.

The Virginia Supreme Court applied Ake in Husske v. Commonwealth, 252 Va. 203, 476 S.E.2d 920 (1996), and defined its parameters, stating that neither the decision in Ake nor due process confers the right to receive "[a]ll assistance that a non-indigent defendant may purchase."  Id. at 211, 476 S.E.2d at 925.  All that is due, constitutionally, is that an indigent defendant not be denied "'an adequate opportunity to present . . . claims fairly within the adversary system.'"  Id. (quoting Ross v. Moffitt, 417 U.S. 600, 612 (1974)).

To warrant the appointment of an expert, the Husske Court also noted that "the indigent defendant . . . must show a particularized need."  Id. at 212, 476 S.E.2d at 925.  The showing required "'is a flexible one and must be determined on a case-by-case basis.'"  Id. at 212, 476 S.E.2d at 925-26 (quoting State v. Mills, 420 S.E.2d 114, 117-19 (N.C. 1992)).  "Whether a defendant has made the requisite showing of a particularized need lies within the discretion of the trial court."  Lenz v. Commonwealth, 261 Va. 451, 462, 544 S.E.2d 299, 305 (2001) (citing Husske, 252 Va. at 212-13, 476 S.E.2d at 926); accord

-

Hoverter v. Commonwealth, 23 Va. App. 454, 466, 477 S.E.2d 771, 776 (1996).

Numerous Virginia appellate cases address the question of whether a "particularized need" has been established by an indigent defendant. None of the cases establishes a bright-line test for what constitutes a "particularized need." It is in the context of facts found insufficient to satisfy the Ake test that the meaning of the phrase, "particularized need," emerges. Citing Caldwell v. Mississippi, 472 U.S. 320 (1985), for example, the Court in Husske rejected what it described as "'little more than undeveloped assertions that the requested assistance would be beneficial,'" as insufficient to establish the requisite need. Husske, 252 Va. at 210, 476 S.E.2d at 926 (quoting Caldwell, 472 U.S. at 323 n.1) (emphasis added). In Watkins v. Commonwealth, 229 Va. 469, 331 S.E.2d 422 (1985), the Court found the claim that "'a particular service might be of benefit,'" was insufficient to establish that "'the [requested] service is constitutionally required.'" Id. at 478, 331 S.E.2d at 430 (quoting Ross, 417 U.S. at 616) (emphasis added). In Barnabei v. Commonwealth, 252 Va. 161, 477 S.E.2d 270 (1996), a case decided the same day as Husske, the Court found that the defendant's request for the appointment of a forensic pathologist to rebut the medical examiner's testimony about the rape victim's injuries did not articulate a particularized need because it amounted to, at best "a hope or suspicion that

-

favorable evidence [that the victim's injuries did not necessarily result from force] may be procured." Id. at 171, 477 S.E.2d at 276 (emphasis added). In Hoverter, the defendant predicated his request for an appointed expert on the need "to determine if psychological or mental health mitigation evidence exists," and if so, "to aid him in the development and presentation of such evidence for the sentencing proceeding." Hoverter, 23 Va. App. at 466, 477 S.E.2d at 776 (emphasis added). The Court affirmed the trial court's finding that a particularized need was not established, noting that Hoverter had made no showing that he suffered from mental illness. Id. at 467, 477 S.E.2d at 777. In short, the indigent defendant's need for an appointed expert at state expense has to be more than hypothetical; the court must be able to conclude that expert assistance relates to an issue which is likely to be material to the defense.

Inherent in this Court's review of whether a defendant has articulated a particularized need for the assistance of an expert is the question of possible prejudice to the defense were the request to be denied. In Hoverter, for example, the defendant showed no prejudice resulted from the non-appointment of an expert to give testimony on prison conditions. Other evidence on the issue had already been admitted, and the Court found Hoverter failed to show why this other evidence did not adequately address the question. Id. at 466, 477 S.E.2d at 776;

-

see also <u>Ake</u>, 470 U.S. at 78 (finding that a high risk of error exists if the case were to proceed in the absence of the requested assistance); <u>Lenz</u>, 261 Va. at 462, 544 S.E.2d at 305 (finding that, because the expert testimony defendant proffered was available from other witnesses, he suffered no prejudice and the trial was not fundamentally unfair).

In the case at bar, we find that Sanchez articulated a particularized need for additional funds to permit his expert to testify at trial and that the trial court abused its discretion in denying his motion.  Sanchez proffered that the defense expert had found errors in the "way that the DNA procedures were followed, that there were errors in the way the examination was done, which could have had a significant impact in the results of the DNA."

The validity of the DNA evidence was material to Sanchez's defense.  The trial court's initial appointment of a DNA expert at state expense to assist Sanchez in evaluating the test results produced by the Commonwealth's DNA expert reflects that materiality, and the record confirms it.  The Commonwealth's DNA results implicated Sanchez as the driver of the car, constituting significant physical evidence that directly linked Sanchez to the driver's seat.

Sanchez's ability to challenge the validity of the Commonwealth's DNA results was truncated by the trial court's

-

denial of the additional funds that Sanchez sought.  Sanchez proffered that the results would be challenged based on his expert's conclusions that there were errors in the manner in which the Commonwealth's DNA expert followed testing procedures. At trial, the Commonwealth's expert testified that he followed a "simple method" of DNA analysis and described the method in detail in support of his conclusions.  Because Sanchez had no witness available to challenge the validity of the Commonwealth's evidence, the Commonwealth's expert's testimony was unrebutted, a prejudicial disadvantage foreseen by the Ake Court.  Ake, 470 U.S. at 77 ("Without . . . the expert's assistance, the defendant cannot offer a well-informed expert's opposing view, and thereby loses a significant opportunity to raise in the jurors' minds questions about the State's proof . . . .").  Here, Sanchez was "unable because of poverty to parry by his own witnesses the thrusts of those against him." Reilly v. Barry, 166 N.E. 165, 167 (N.Y. 1929).  As a result, he could not fully present a defense against the Commonwealth's DNA evidence that tended to establish that he was the driver of the vehicle involved in the hit-and-run offense.

In summary, we find that the trial court erroneously denied Sanchez's motion for additional funds to permit his expert to testify at trial and that the denial of the requested funds prejudiced Sanchez and his ability to mount a proper defense to

-

the hit-and-run charge.  See Lenz, 261 Va. at 462, 544 S.E.2d at 305.

We now turn to whether the trial court's denial of additional funds for an expert witness was harmless error. Although the issue of harmless error in the Ake context has not specifically been addressed in Virginia, the Fourth Circuit determined that the denial of expert assistance in violation of Ake is trial error subject to harmless error analysis.  Tuggle v. Netherland, 79 F.3d 1386, 1392 (4th Cir. 1996).

In Tuggle, the court noted that, "Errors amenable to harmless-error review are trial errors."  Id.  "Trial error 'occur[s] during the presentation of the case to the jury, and is amenable to harmless-error analysis because it may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]."  Brecht v. Abramson, 507 U.S. 619, 629 (1993) (quoting Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991)).[2]

The error identified in this case is a trial error and subject to harmless error analysis.  On direct appeal, the

---

[2] Trial errors may be contrasted with structural errors, such as the deprivation of the right to counsel, trial by a biased judge, the unlawful exclusion of members of the defendant's race from a grand jury, and the denial of the right to a public trial.  Fulminante, 499 U.S. at 309-10.  Unlike trial errors, structural errors are not amenable to harmless error analysis because they "'infect the entire trial process.'" Tuggle, 79 F.3d at 1391 (quoting Brecht, 507 U.S. at 630). Thus, assessing the impact of structural errors on the trial is impossible.  Id.

–

harmless error standard for constitutional error is whether the error "was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967). Under that standard, a constitutional error may not be declared harmless if there is a "reasonable possibility" that the "error contributed to the verdict." Tuggle, 79 F.3d at 1392.

Applying this standard to the case at bar, we find the trial court's error in denying Sanchez's request for additional funds for a DNA expert was reversible error. Sanchez sought expert testimony to challenge the Commonwealth's DNA evidence that implicated him as the driver of the Honda Accord at the time of the hit-and-run accident. Indeed, the bloodstain found on the inside of the driver's door was significant physical evidence directly linking Sanchez to the driver's seat. The trial court's denial of additional funds for an expert deprived Sanchez of the opportunity to use a rebuttal expert to challenge the DNA analysis procedures followed by the Commonwealth's witness. Such rebuttal evidence could be crucial in a case that otherwise rested on the testimony of only one witness who identified Sanchez as the driver at the time of the accident and whose competence or credibility was subject to challenge.[3]

---

[3] Although two other witnesses, Sandra Contrevas and Helen Unangst, identified Sanchez as the driver of the car at some point prior to the accident, Johnny Rigaberto Cerrato-Marquez was the sole witness who testified that Sanchez was the driver at the time of the accident.

Because we find the circumstances create a "reasonable possibility" that the "error contributed to the verdict," Tuggle, 79 F.3d at 1392, we find the error was not harmless "beyond a reasonable doubt." Chapman, 386 U.S. at 24.

Accordingly, we reverse the trial court's decision to deny Sanchez additional funds for an expert witness.

### III. Sufficiency of the Evidence

Although we reverse Sanchez's conviction, the constitutional principles which preclude placing an individual's freedom in jeopardy twice require us to address Sanchez's claim that the evidence was insufficient to sustain his conviction. See Parsons v. Commonwealth, 32 Va. App. 576, 581, 529 S.E.2d 810, 812-13 (2000); see also Burks v. United States, 437 U.S. 1, 18 (1978) (finding that a full sufficiency analysis is required to satisfy the mandate of the Double Jeopardy Clause of the federal Constitution); Timbers v. Commonwealth, 28 Va. App. 187, 201-02, 503 S.E.2d 233, 240 (1998) (addressing appellant's sufficiency of the evidence claim, after reversing on a Miranda violation, to comport with double jeopardy principles).

In reviewing a sufficiency claim on appeal, we "consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth[,]" the party prevailing below. Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). The trial court's judgment must be affirmed "unless plainly wrong[,]" Phan v. Commonwealth,

-

258 Va. 506, 511, 521 S.E.2d 282, 284 (1999), and an appellate court "'should not overrule it and substitute its own judgment, even if its opinion might differ from [the trial court's].'" Id. (quoting George v. Commonwealth, 242 Va. 264, 278, 411 S.E.2d 12, 20 (1991)).

It is within the province of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts presented. Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). Witness credibility determinations shall only be disturbed on appeal if the testimony is "inherently incredible, or so contrary to human experience so as to render it unworthy of belief." Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984). To convict Sanchez, the Commonwealth was required to prove, beyond a reasonable doubt, that Sanchez 1) was the driver of a vehicle he knew was involved in an accident causing personal injury, 2) knew or should have known that a person was injured, and 3) that he failed to (a) stop immediately as close to the accident as possible, (b) render all reasonably necessary assistance to any person injured, or (c) report his name, address, driver's license number and vehicle registration number to the police or the person injured. Code § 46.2-894. We find the evidence presented by the Commonwealth was sufficient to prove those elements beyond a reasonable doubt.

-

The evidence supports the jury's conclusion that Sanchez was driving the car when it was involved in the accident. Cerrato-Marquez identified him as the driver of the car in the period before the accident. The jury could also consider evidence that Contrevas identified Sanchez as the driver earlier in the evening and that Unangst identified Sanchez as the individual who carjacked her Honda Accord two days before the accident. The trier of fact was free to accept and credit the testimony of these witnesses and was free to reject the alibi testimony of Sanchez's brother and friend. Moreover, DNA evidence established that blood found on the inside panel of the driver's side door came from Sanchez.

Sanchez also contends that the evidence does not support the conclusion that he failed to fulfill the duties imposed on him by Code § 46.2-894 as the driver of a vehicle involved in an accident in which someone had been killed or injured. We disagree with this contention.

The evidence in the record shows that Sanchez neither rendered reasonable assistance to Cerrato-Marquez, who was clearly injured, nor came to the aid of Ramirez-Alvarez and Ramirez-Villatoro, who lay dead or dying in the car. Indeed, Cerrato-Marquez regained consciousness, lying in the bushes beside a creek, so dazed and disoriented that he thought someone had robbed and beaten him. The jury could reasonably infer that Sanchez did not report the accident or call for assistance

-

because, although it occurred between 2:00 and 4:00 a.m., the vehicle and the fatalities were not discovered until 11:30 that morning. Donald Lee, the Virginia State Police Motorist Assistant, responded not to an accident report but to a report from his dispatcher to check debris in the road; he discovered the Honda Accord on the other side of the guardrail on the Dulles Connector Road. No evidence established that the arrival of police on the scene was in response to an accident report.

Accordingly, we find the evidence sufficient beyond a reasonable doubt to convict Sanchez and that reversal and remand to the trial court for further proceedings are not in violation of double jeopardy principles.

### IV. Evidence of the Carjacking

Sanchez also contends that the trial court erred in denying his motion in limine that the Commonwealth not reveal to the jury his participation in the carjacking of the car involved in the accident.[4] Because the issue may arise again at trial on remand, we address the question and find no error.

---

[4] Sanchez moved the trial court in limine to direct the Commonwealth not to seek to admit or refer to: 1) his prior criminal record, unless used to impeach him, 2) any statements regarding his prior incarceration, 3) any allegations of his drug use or abuse, 4) the existence of any juvenile convictions or findings of delinquency, and 5) prior bad acts, including the alleged carjacking. The Commonwealth did not object to motions 1-4, and they were granted. The motion in limine regarding prior bad acts, specifically evidence of the carjacking, is the only motion at issue on appeal.

-

The legal principles governing the issue are well settled. Evidence of other crimes or bad acts is inadmissible if it is offered to show that the defendant is likely to have committed the crime charged. Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 79 S.E.2d 802, 805 (1970). However, such evidence is admissible if it tends to prove any element of the offense charged, although it also tends to show that the defendant is guilty of another crime. Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 380-81 (1988). In addition, evidence of other crimes may be admitted to establish the perpetrator's identity, Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 617 (1990), to show motive or intent, establish knowledge, negate mistake or accidence, establish modus operandi or to show common scheme or plan. Lockhart v. Commonwealth, 18 Va. App. 254, 259, 443 S.E.2d 428, 429 (1994). Evidence of this nature will be permitted only when its probative value outweighs any incidental prejudice to the defendant. Woodfin, 236 Va. at 95, 372 S.E.2d at 380-81. The trial court is vested with the discretion to determine whether the evidence of prior bad acts has probative value that outweighs the prejudice to the accused. Spencer, 240 Va. at 90, 393 S.E.2d at 617.

> [T]he general rule . . . must sometimes
> yield to society's interest in the
> truth-finding process, and numerous
> exceptions allow evidence of prior
> misconduct [w]henever the legitimate
> probative value outweighs the incidental
> prejudice to the accused. For this reason,

-

> rather than stating the rule as an
> exclusionary rule with numerous exceptions,
> it may be more helpful to phrase [it] in
> terms of relevance.

Wilkins v. Commonwealth, 18 Va. App. 293, 297, 443 S.E.2d 440, 443 (1994) (en banc) (citations and quotations omitted).

In the instant case, the evidence sought to be admitted establishes that two days and a few hours before the accident, Sanchez was identified as the person who carjacked the car involved in the hit-and-run offense. The victim, Helen Unangst, identified him as the perpetrator, and the testimony of Sandra Contrevas, established that a few hours before the accident, Sanchez was driving the carjacked car. Sanchez's involvement in the carjacking tends to prove his identity as the driver at the time of the accident and relates to an essential element of the crime with which he was charged. The evidence also tends to establish a motive for not reporting the accident as required by law, since such a report would have incriminated Sanchez in the carjacking.

Sanchez claims he was prejudiced by the admission of the carjacking evidence because the jury may have inferred his guilt on the hit-and-run charge from the fact that he was also being tried for carjacking. However, when the relevance of prior acts evidence sought to be admitted is clear, the admission into evidence of even serious crimes may not be unduly prejudicial.

-

See, e.g., Satcher v. Commonwealth, 244 Va. 220, 230-31, 421 S.E.2d 821, 828 (1992) (finding that, in capital murder, rape, and related crimes trial, evidence of prior assault, robbery, and attempted rape in same general location was properly admitted to show motive, intent, and common scheme or plan); Stockton v. Commonwealth, 227 Va. 124, 143, 314 S.E.2d 371, 383 (1984) (finding that, in capital murder trial, it was proper to admit evidence of subsequent murder committed to silence eyewitness to murder being tried), rev'd on other grounds, 852 F.2d 740 (4th Cir. 1998); Robbins v. Commonwealth, 31 Va. App. 218, 223-24, 522 S.E.2d 394, 396 (1999) (finding that, in trial for breaking and entering with intent to commit assault, evidence of prior abduction and severe beating of same victim was properly admitted to show intent); Tomlinson v. Commonwealth, 8 Va. App. 218, 224, 380 S.E.2d 26, 30 (1989) (finding that, in trial for shooting into occupied dwelling, evidence of later shooting into a different dwelling the same evening was properly admitted to show intent or scheme). We find the probative value of the carjacking evidence outweighs any possible prejudice to Sanchez as a result of its admission.

Furthermore, the jury was properly instructed not to consider the carjacking evidence as general evidence of Sanchez's guilt. Such instructions minimize any incidental, undue prejudice. Robbins, 31 Va. App. at 224, 522 S.E.2d at 397.

-

In summary, we find the trial court did not err in admitting evidence that Sanchez was identified as the perpetrator of a prior carjacking offense.

## V. Conclusion

We find that the trial court erred in refusing to grant Sanchez additional funds for his expert witness to testify at trial. Sanchez established a particularized need for the services, and the failure to allot him the funds adversely affected his ability to rebut and challenge the Commonwealth's evidence. We further find the evidence was sufficient to establish Sanchez's guilt on the charge of felony hit and run beyond a reasonable doubt and that Sanchez's retrial on the same charge will not violate double jeopardy principles. Finally, we find the trial court properly admitted evidence of Sanchez's prior carjacking because it tended to prove his identity as the driver in the hit-and-run accident and that its probative value outweighed any prejudicial effect on Sanchez. Because we also find that the denial of Sanchez's motion for additional funds for his expert witness constituted error that was not harmless beyond a reasonable doubt, we reverse his conviction and remand

-

the matter to the trial court for further proceedings if the Commonwealth be so disposed.[5]

Reversed and remanded.

---

[5] Because we reverse on other grounds, we do not address the issues Sanchez raises on appeal that will not arise on retrial.

-