COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Russell, AtLee and Malveaux
Argued by teleconference


KAREEM HASSON TURNER

MEMORANDUM OPINION* BY
v.        Record No. 1807-16-1          JUDGE RICHARD Y. ATLEE, JR.
                                        JULY 17, 2018

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph A. Migliozzi, Jr., Judge

Andrew M. Sacks (Stanley E. Sacks; Sacks & Sacks, on briefs), for
appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


A Norfolk jury convicted Kareem Turner[1] of the first-degree murder and attempted

robbery of Dajuan Glover ("the victim"), as well as two attendant charges of using a firearm to

commit those crimes.  Turner's sole assignment of error[2] reads as follows:

> The trial court erred in overruling [Turner]'s motions to strike the
> first degree murder and associated use of a firearm indictments at
> the conclusion of the Commonwealth's evidence and at the
> conclusion of all of the evidence, and further erred in overruling
> [Turner]'s motions to set aside the verdicts of guilty as to these

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Two people with the surname Turner were involved in the crimes.  We refer to
appellant Kareem Turner as "Turner" and to his co-defendant and cousin Roy Turner as "Roy."

[2] Although Turner's petition for appeal assigned four errors, a panel of this Court denied
the petition as to three of those assignments of error, leaving only one for our consideration.  See
also infra Part II.A. (discussing the effect of the partial denial of Turner's petition for appeal).

charges, on the grounds that the evidence was insufficient as a
matter of law to support the indictments and convictions.

We find Turner's appeal meritless, and affirm the circuit court.

I. BACKGROUND

"The evidence and all just and reasonable inferences therefrom must be viewed on appeal
in the light most favorable to the [Commonwealth]." Pijor v. Commonwealth, 294 Va. 502, 516,
808 S.E.2d 408, 415 (2017) (alteration in original) (quoting Carter v. Commonwealth, 223 Va.
528, 532, 290 S.E.2d 865, 867 (1982)). The evidence established that Norfolk police officers
found the body of the victim on the side of a street in Norfolk. The victim had sustained
numerous gunshot wounds, and was pronounced dead at the scene.

On the night of the killing, Tracy Covil, the victim, and another friend went to a house
party. Turner, Roy, and a man named Joshua Wood were also at the party. Sometime after
4:00 a.m., the victim left the party with Covil and Ricola Lawshea (an acquaintance with whom
the victim had been socializing at the party). Turner, Roy, and Wood had already left.

Covil testified that he went ahead of the victim and Lawshea as they walked toward the
victim's vehicle. As the three made their way down the street, Covil saw two people following
the victim and Lawshea. According to Covil, a second group of people ahead appeared to be
watching them. As Covil prepared to unlock the vehicle, a man pulled out a gun and demanded
money. After later viewing a photographic lineup, Covil identified that person as Roy. Roy took
Covil's wallet, ten dollars, and the keys to the vehicle. A second man, whom Covil could not
identify, was standing nearby watching the robbery. That man began running toward the area
behind the vehicle where the victim's body was later found. Covil testified that Roy then turned
his head toward the back of the vehicle. When Covil noticed Roy's distraction, he fled. As he
escaped, Covil heard numerous gunshots.

- 2 -

Lawshea testified that she and the victim were embracing as Covil walked ahead to open the vehicle. Lawshea saw Turner near the driver's side of the vehicle. Wood appeared, pushed Lawshea aside, and put a gun to the victim's side. According to Lawshea, the victim appeared to be reaching for something, and Wood asked him "What are you reaching for?" Lawshea then saw Turner moving toward the victim and Wood. Turner was holding what Lawshea believed to be a gun. Wood then shot the victim, and Lawshea fled in the direction of the party. As she did so, she heard more gunshots. Partway down the street, she hid behind a car and saw Wood stand over the victim and shoot him. Within hours of the shooting, Lawshea identified Turner from a photographic lineup as the man with Wood when the victim was shot.[3]

Sir Thomas Boyd testified that he also attended the party. He was sitting in his parked car just before the shooting occurred. He saw two men, whom he later identified as Turner and Roy, walk past his car carrying guns. Turner and Roy "boxed in" a male, then fired their weapons at him. Boyd saw Turner and Roy again when they walked past Boyd's car after the shooting. As he drove away, Boyd saw a body on the ground.

Police obtained warrants for Turner's arrest, and arrested him that same day. Turner had a set of car keys and remote entry key fob in his possession. The key fob unlocked a Chevrolet Malibu parked across the street from the apartment complex where Turner was arrested. Both Turner's and Roy's fingerprints were found on the exterior of the car.

In the center console of the Malibu, police recovered "a plastic bag containing 31 capsules of tan powder," later tested and found to be heroin. An analyst from the Virginia Department of Forensic Science developed a "DNA mixture profile" after analyzing the plastic

---

[3] Lawshea was also previously acquainted with Turner.

bag. Turner could not be eliminated as a contributor to that DNA mixture profile.[4] Also found in the center console were slips of paper bearing the name "Buck" and Turner's telephone number. The Commonwealth established that Turner was also known as "Buck" or "Hess Buck." Additionally, a .40 caliber Glock handgun with an extended magazine[5] was on the front floorboard of the car.

An expert in firearm and toolmark analysis, employed by the Virginia Department of Forensic Science, testified that three different weapons were used in the shooting: two .40 caliber handguns and a nine millimeter handgun. That expert testified that sixteen cartridge casings found at the scene of the crime were fired from the gun found in the Malibu. An autopsy revealed that the victim had been shot between sixteen and twenty-three times. Three of the bullets/bullet fragments recovered from the victim's body during the autopsy could not be eliminated as having been fired from the Glock found in the Malibu. The firearm expert was able to determine that these bullets/bullet fragments were not fired from the two other guns used in the shooting.

Turner had a cell phone in his possession at the time of his arrest. Analysis of records associated with that phone showed that it was active in the area and near the time of the killing, which occurred around 4:10 a.m. By 5:02 that morning, the phone was moving away from the area of the crime, and was used to call Roy's cell phone.

Three different men with whom Turner was incarcerated testified at trial to statements Turner made to them. Two days after the killing, Fitzhugh Warren encountered Turner at the jail

---

[4] Both of Turner's co-defendants, Roy and Wood, were eliminated as contributors to the DNA mixture profile, as was the victim.

[5] The magazine extension had capacity for twenty-nine rounds of ammunition. Coupled with one chambered round, the recovered handgun had a total capacity of thirty rounds.

where they were both housed. Warren asked Turner why he was in jail. Turner replied that he "just pumped 19 hot into a mother fucker" and that they "got that New York mother fucker."[6]

Terrell Crawley testified that he too was incarcerated with Turner, and several months after the killing he asked Turner why he was in jail. Turner said he and others "had gone to a funhouse, had a couple drinks and checked the strippers out." Turner added that he had played a dice game, which "he was losing and 'Dee' was winning."[7] Turner told Crawley that after people began leaving the party, he waited outside for "Dee" and eventually "started drilling him." Turner questioned Crawley about how to "beat" a gun charge. He also told Crawley that the police had gotten the gun out of a car and that he had the keys to the car in his pocket.[8]

Finally, Thomas Cain testified that he was incarcerated with a man who called himself "Hess Buck." At trial, Cain testified that the man he knew as Hess Buck looked like Turner, but at the time he spoke with him in jail (over a year and a half before trial), the man "had longer dreads and a chin strap [beard]." According to Cain, the man said he was involved in a shooting. He, his cousin "Rawdog,"[9] and a "homeboy" named Joshua had gone to a "dice party." The man told Cain that during a dice game, "some guy named 'Little D' had won all the money." As a result, "[t]hey were upset and him, his cousin, and his homeboy went outside and was talking about how to get their money back." The man told Cain he was concerned that others at the party might have seen what happened and that the police may have found his .40 caliber handgun.

---

[6] The victim was from New Jersey.

[7] "Dee" was the victim's nickname.

[8] Crawley admitted that he was incarcerated at the time of Turner's trial and that his attorney planned to ask for a reduction of Crawley's sentence.

[9] Roy was identified as "Rawdog" by the Commonwealth's evidence.

At trial, the circuit court admitted a portion of a rap video from YouTube entitled "All I Know." The video was labeled with the name "Hess Buck" and had been uploaded a few weeks before the killing. In the video, Turner rapped that he "ke[pt] a Glock with a thirty on it."

The jury returned guilty verdicts as to the two charges at issue in this appeal, first-degree murder and use of a firearm in the commission of that murder. The circuit court imposed the jury's sentences: thirty years in the penitentiary for first-degree murder and three years in the penitentiary for use of a firearm in the commission of that murder. Turner now appeals.

II. ANALYSIS

A. Procedural Background

In his petition for appeal, Turner assigned four errors. First, he alleged that there was insufficient evidence to support his convictions for first-degree murder and use of a firearm in the commission of that crime. Second, he alleged that there was insufficient evidence to support his convictions for attempted robbery and use of a firearm in the commission of that crime. Third, he alleged that the circuit court erred when it admitted a video depicting Turner "discussing a Glock handgun with a 30-round extended magazine, on the grounds that such evidence was not relevant . . . or, in the alternative, its probative value was substantially outweighed by the danger of unfair prejudice or the likelihood that the evidence would confuse or mislead the jury." Fourth, he alleged that the circuit court erred when it admitted "the testimony of Commonwealth witness Thomas Cain relating a purported incriminating conversation with [Turner], on the grounds that the Commonwealth failed to sufficiently identify that the person with whom Mr. Cain alleged to be speaking was in fact [Turner]."

Following review by a single judge of this Court, pursuant to Code § 17.1-407(C), Turner's petition for appeal was denied as to all four assignments of error. Turner v. Commonwealth, Record No. 1807-16-1 (Va. Ct. App. July 19, 2017) (*per curiam*). Pursuant to

Code § 17.1-407(D), a three-judge panel of this Court later granted Turner's petition as to his first assignment of error alleging that the evidence was insufficient to support Turner's convictions for first-degree murder and use of a firearm in the commission of that murder. Turner v. Commonwealth, Record No. 1807-16-1 (Va. Ct. App. Oct. 13, 2017). The three-judge panel denied Turner's petition as to the remaining assignments of error.

"Only those arguments presented in the petition for appeal *and granted by this Court* will be considered on appeal." McLean v. Commonwealth, 30 Va. App. 322, 329, 516 S.E.2d 717, 720 (1999) (emphasis added). Thus, we do not revisit the issues raised in Turner's denied assignments of error, nor does Turner ask us to do so. The denial of those assignments of error is relevant to our consideration of his remaining assignment of error, however, because we must view the facts underpinning the denied assignments of error as proven. That is, when we consider his assertion that the evidence was insufficient to prove that he murdered the victim and used a gun to do so, we must assume that he *did* attempt to rob the victim, and did so with a gun.

### B. Substantive Analysis

When the sufficiency of the evidence is challenged on appeal, "this Court 'has a duty to examine all the evidence that tends to support the conviction.'" Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). We view the evidence "in the light most favorable to the Commonwealth as the prevailing party in the trial court, [and] we must uphold the conviction unless it is plainly wrong or without evidence to support it." Id. Further, this Court must "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn" from that evidence. Bowman v. Commonwealth, 290 Va. 492, 494, 777 S.E.2d 851, 853 (2015) (quoting Kelley v. Commonwealth, 289 Va. 463, 467-68, 771 S.E.2d 672, 674 (2015)).

"If there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at trial." Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998).

"Circumstantial evidence [presented during the course of a trial] is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Holloway v. Commonwealth, 57 Va. App. 658, 665, 705 S.E.2d 510, 513 (2011) (*en banc*) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)). "Circumstantial evidence is not viewed in isolation. While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Muhammad v. Commonwealth, 269 Va. 451, 479, 619 S.E.2d 16, 32 (2005).

Turner argues on appeal that the evidence was insufficient to prove him guilty of murder and using a firearm to commit that murder. Specifically, he contends that the testimony of many of the Commonwealth's witnesses was inherently incredible due to their prior criminal records or their incentives to testify falsely against Turner.

"[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." Parham v. Commonwealth, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015). "Witness credibility determinations shall only be disturbed on appeal if the testimony is 'inherently incredible, or so contrary to human experience so as to render it unworthy of belief.'" Sanchez v. Commonwealth, 41 Va. App. 319, 335, 585 S.E.2d 327, 335 (2003) (quoting Fisher v. Commonwealth, 228 Va. 296, 299, 321 S.E.2d 202, 204 (1984)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." Juniper v. Commonwealth, 271 Va. 362,

- 8 -

415, 626 S.E.2d 383, 417 (2006) (quoting Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968)).  Furthermore, "[t]he fact finder is not required to believe all aspects of the testimony of a witness" and "may 'accept the parts of a witness' testimony it finds believable and reject other parts as implausible.'"  Parham, 64 Va. App. at 565, 770 S.E.2d at 207 (quoting Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d 580, 590 (2000) (en banc)).

Most of the Commonwealth's witnesses were convicted felons, and many had prior misdemeanor convictions for crimes of moral turpitude as well.  Both of these factors are appropriate grounds for impeachment.  See, e.g., Code § 19.2-269 ("A person convicted of a felony or perjury shall not be incompetent to testify, but the fact of conviction may be shown in evidence to affect his credit."); Va. R. Evid. 2:609(b) ("The fact that any other witness has previously been convicted of a felony, or a misdemeanor involving moral turpitude, . . . may be elicited during examination of the witness or, if denied, proved by extrinsic evidence."); Dowell v. Commonwealth, 12 Va. App. 1145, 1147, 408 S.E.2d 263, 264 (1991) ("Evidence of a prior conviction of a misdemeanor involving moral turpitude is admissible to impeach the credibility of a witness."), aff'd on reh'g en banc, 14 Va. App. 58, 414 S.E.2d 440 (1992).  Some of the witnesses had pending charges where the possibility existed that they might be given consideration in the future for their testimony at Turner's trial.  This too was a legitimate basis for impeachment, to the extent it might tend to show a motivation to present evidence at Turner's trial that was helpful to the Commonwealth, but false.  See, e.g., Va. R. Evid. 2:607(a)(viii) (permitting impeachment of a witness by use of "any other evidence which is probative on the issue of credibility because of a logical tendency to convince the trier of fact that . . . the sincerity or veracity of the witness is questionable").

However, the right to impeach a witness simply entitles a party to attempt to persuade the factfinder to disbelieve that witness.  It is no guarantee of success in that endeavor.  The jury had the

opportunity to see and hear the witnesses. The testimony of those witnesses was not "manifestly false," Juniper, 271 Va. at 415, 626 S.E.2d at 417 (quoting Cardwell, 209 Va. at 414, 164 S.E.2d at 701), "or so contrary to human experience as to render it unworthy of belief," Sanchez, 41 Va. App. at 335, 585 S.E.2d at 335 (quoting Fisher, 228 Va. at 299, 321 S.E.2d at 204). Therefore, that testimony was not inherently incredible as a matter of law, and the jury was entitled to accept it.

Finding that the testimony was not inherently incredible, we find the evidence more than sufficient. The witness testimony placed Turner at the scene of the shooting, carrying a gun. Further, while in jail, Turner made multiple statements to different individuals indicating that he had used a .40 caliber weapon to fire numerous shots. He told one witness that he had "just pumped 19 hot into [the victim]," and told another that he had waited for "Dee" to leave the party and then "started drilling[10] him." He suggested that he was angry because the victim had won money from him gambling at the party and that he wanted his money back.

The testimony of the Commonwealth's witnesses was also corroborated by the physical evidence. On the day of the shooting and his arrest, Turner had keys to a Chevrolet Malibu in his pocket. The Malibu was parked across the street from the apartment complex where he was arrested. Fingerprints, and writings with Turner's nickname and telephone number, were found on or in the Malibu. A video admitted into evidence, uploaded to YouTube less than two weeks before the murder, showed Turner rapping that he "ke[pt] a Glock with a thirty on it." A Glock .40 caliber handgun, with a magazine extension enabling it to hold thirty rounds of ammunition, was found inside the Malibu. Sixteen cartridge casings found at the crime scene were shot from

_____

[10] Turner also argues that, even if Turner did make this statement, the word "drilling" is too ambiguous to qualify as an admission to a shooting. Viewing the term in the light most favorable to the Commonwealth, we disagree. See Bowman, 290 Va. at 494, 777 S.E.2d at 853 (requiring appellate courts to draw "all fair inferences" from the evidence of the prevailing party (quoting Kelley, 289 Va. at 467-68, 771 S.E.2d at 674)).

that gun. Several bullets/bullet fragments recovered from the autopsy of the victim could not be eliminated as having been fired from that gun.

The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Turner was guilty of murder and using a firearm to commit that murder. This Court affirms the jury's verdict, as it was supported by the evidence and was not plainly wrong.

### III. CONCLUSION

The evidence of Turner's guilt was sufficient, and we affirm.

<u>Affirmed.</u>