COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Coleman
Argued at Chesapeake, Virginia


ANTIONETTE ROBINSON, S/K/A
  ANTOINETTE ROBINSON
                                                          OPINION BY
v.        Record No. 2427-07-1              JUDGE RANDOLPH A. BEALES
                                                          APRIL 14, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

        Peter S. Economou (Office of the Public Defender, on brief), for
        appellant.

        Gregory W. Franklin, Assistant Attorney General (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        Antoinette Robinson (appellant) was convicted of possession of cocaine, in violation of

Code § 18.2-250.  On appeal, appellant argues that the trial court erred in ruling that the police

had probable cause to arrest her and, therefore, erred in denying her motion to suppress drug

evidence seized from her person incident to the arrest.  Finding no error, we affirm.

I. BACKGROUND

        At approximately 11:10 p.m. on February 20, 2007, City of Newport News Police Officer

Carlos Nunez received information from a confidential informant ("CI") concerning an imminent

drug transaction.  The CI was registered with the Newport News police and had been referred to

Officer Nunez by a detective in the vice division.  The CI began working with Officer Nunez at

the beginning of 2007.  Prior to the night of February 20, the CI had provided Officer Nunez

with information leading to three arrests, and it was the officer's understanding that the CI had provided information to other officers leading to five additional arrests.[1]

During the conversation on the night of February 20, 2007, the CI informed Officer Nunez that

> [a] black female named Antoinette . . . was in possession of cocaine. That informant also advised me that this female was going to be driving a gray Crown Victoria bearing Virginia license plate No. JXX 4383 and that this female was driving to the WaWa gas station at the intersection of Beechmont and Warwick and this female was going to meet a person who she was going to go and sell narcotics to.

In addition, the CI informed Officer Nunez that he or she had personally observed "Antoinette" possess cocaine on that night.

After receiving the tip from the CI, Officer Nunez promptly contacted Officer Howser to assist in surveillance of the WaWa gas station mentioned by the CI. Working in tandem, the two officers observed both sides of the gas station. Officer Nunez observed the Beechmont Avenue side, and Officer Howser observed the Warwick Boulevard side, which included the parking lot. Officer Howser selected a spot approximately 100 yards away from the gas station. His view was aided by binoculars and by the lighting from the WaWa station. The officers communicated by radio and agreed to wait until a drug transaction occurred before arresting any suspects. The surveillance was set up by 11:25 p.m., fifteen minutes after the CI contacted Officer Nunez.

Shortly after the officers positioned themselves, according to Officer Nunez, a "gray colored Ford Crown Victoria bearing Virginia license plate JXX 4383" pulled into the gas station. The driver (who was the only occupant of the car) was later identified as appellant.

---

[1] At the suppression hearing, the prosecutor did not ask Officer Nunez on direct examination whether the CI had ever provided false information, and appellant's counsel made no such inquiries on cross-examination.

- 2 -

Officer Howser observed the following from his surveillance post. Appellant parked by a gas pump, exited the vehicle, and looked to the left and to the right as she walked into the WaWa's convenience store ("the store"). Appellant walked around the store for a minute. Then appellant met a man inside the store. Officer Howser lost sight of appellant and the man as they walked to the back of the store. Appellant exited the store one minute later, walked back to appellant's car, and sat in the car for another minute. The man then exited the store. After walking approximately ten feet past the Crown Victoria, the man turned around and walked back to the car. The man bent down, placed his left shoulder against the driver's side door, and placed his hand inside the door. The man held this position for about ten seconds and then walked away from the car. Officer Howser did not observe a hand-to-hand exchange between appellant and the unknown man, but the officer did observe that appellant drove away in the Crown Victoria without ever pumping any gas despite parking next to the pump.

After learning what Officer Howser had observed, Officer Nunez initiated a traffic stop of the Crown Victoria and arrested appellant. During a search incident to appellant's arrest, a plastic bag of crack cocaine was found in her jacket pocket.

Appellant moved to suppress the drug evidence on the grounds that the officers lacked probable cause to arrest her and, therefore, the search incident to arrest was unlawful. Appellant contended that the CI's reliability was unproven when Officer Nunez received the tip. Furthermore, appellant contended that the CI's tip was never corroborated because Officer Howser testified that he did not actually observe appellant engage in a drug transaction. The trial court disagreed, finding that probable cause to arrest was established based on the CI's predictions concerning appellant's identity and her car's model type and license plate number, as well as the suspicious behavior exhibited by appellant and the other man. In addition, the trial

court remarked, "I don't think [the CI] has to know specifically she's distributing drugs.  I think it's sufficient to know that she is involved in drugs."  This appeal followed.

## II.  ANALYSIS

> The existence of probable cause in a particular case is "a mixed question of law and fact."  Ornelas v. United States, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996).  Accordingly, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc).  However, we review the "ultimate questions" of probable cause to make a warrantless search or arrest *de novo*.  See Ornelas, 517 U.S. at 691.

Byrd v. Commonwealth, 50 Va. App. 542, 551, 651 S.E.2d 414, 418-19 (2007) (footnote omitted).

An officer making a warrantless arrest may rely upon information received through an informant if the officer has reasonable grounds to believe the informant's statement is true.  Id. at 551, 651 S.E.2d at 419.  When the basis for the probable cause determination rests upon a tip, "there are two considerations that are particularly relevant to our analysis:  (1) the veracity or reliability of the informant and (2) the informant's basis of knowledge."  Id. (citing Illinois v. Gates, 462 U.S. 213, 230 (1983)).  The reliability and basis of knowledge of an informant are not independent elements that must be proved in order to find probable cause, Polston v. Commonwealth, 24 Va. App. 738, 744, 485 S.E.2d 632, 635 (1997), but instead "'are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations:  a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'"  Byrd, 50 Va. App. at 552, 651 S.E.2d at 419 (quoting Gates, 462 U.S. at 233).

- 4 -

Appellant argues that the Commonwealth failed to establish the reliability of the CI in this case because the CI had worked with the officer for at most two months and had provided the officer information leading to only three arrests.[2] By contrast, appellant contends, the informant in Askew v. Commonwealth, 38 Va. App. 718, 568 S.E.2d 403 (2002), had worked with the police for three years, providing information leading to over 200 arrests without ever providing unreliable information. Id. at 720, 568 S.E.2d at 404-05. However, appellant's counsel acknowledged at oral argument that neither Askew nor any other controlling case law sets a technical standard concerning informant reliability. Rather, our appellate review of the totality of the circumstances "permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending" the informant's tip. Gates, 462 U.S. at 234. Therefore, "even if we [were to] entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." Id.

Nevertheless, appellant argues that the Commonwealth also inadequately established the basis of the CI's knowledge supporting the tip to Officer Nunez on February 20, 2007, leaving the officers without probable cause to arrest. Appellant's argument focuses on whether the tip was sufficiently corroborated. She claims that "the key allegation that the informant made, that the defendant would be selling drugs at the WaWa, was not verified," because Officer Howser testified he did not actually observe appellant engage in a drug transaction. We disagree.

> The basis of an informant's tip must be "something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Spinelli v. United States, 393 U.S. 410, 416, 89 S. Ct. 584, 21

---

[2] Appellant references only to the amount of time the CI here had worked with Officer Nunez *specifically* and disregards the officer's testimony, admitted by the trial court over appellant's hearsay objection, that the CI had provided other officers with information leading to an additional five arrests.

> L. Ed. 2d 637 (1969). For example, a confidential informant may provide the basis of his knowledge by claiming that he personally observed the crime that he is reporting. See e.g., Askew, 38 Va. App. at 720, 568 S.E.2d at 405 (confidential informant personally observed the defendant in possession of narcotics); Lester v. Commonwealth, 30 Va. App. 495, 501-02, 518 S.E.2d 318, 321 (1999) (confidential informant personally observed the defendant in possession of stolen property); Boyd v. Commonwealth, 12 Va. App. 179, 182, 402 S.E.2d 914, 916 (1991) (anonymous informant had personally observed the defendant in possession of cocaine). In other cases, although the informant does not explicitly claim personal knowledge, his tip may be "so detailed as to raise an inference either of personal observation or of acquisition of the information in a reliable way." McGuire, 31 Va. App. at 595, 525 S.E.2d at 49.

Byrd, 50 Va. App. at 552-53, 651 S.E.2d at 419-20.

Here, the CI claimed that he or she personally observed appellant in possession of narcotics *and* supported this claim with detailed information provided to Officer Nunez. The level of detail included appellant's gender, race, and name; the color, make, model, and license plate number of her car; and appellant's specific destination, the WaWa gas station at Beechmont Avenue and Warwick Boulevard. The CI correctly predicted that appellant was en route to the WaWa station. In addition, the CI correctly predicted that appellant would meet a man there, which she indeed did under suspicious circumstances. While Officer Howser did not actually see appellant engage in a drug transaction with the unknown man at the WaWa station, this fact, however, is but one circumstance to consider in the totality of the circumstances. As the trial court found, the specific details the CI provided concerning appellant's identity, automobile, and destination – as well as the man she would meet at the WaWa station – are significant facts in our analysis here.

Like the informant in Draper v. United States, 358 U.S. 307 (1959), the CI here "could not have made such accurate and detailed predictions of future events without personal or 'inside' knowledge of the suspect's activities." Byrd, 50 Va. App. at 554, 651 S.E.2d at 420. As

- 6 -

in <u>Draper</u>, the fact that the officers "personally verified every facet of the information" given by the CI "except whether [appellant] had accomplished [her] mission" did not leave the officers without probable cause to arrest. See <u>Draper</u>, 358 U.S. at 313. Therefore, the fact that Officer Howser never actually observed a drug transaction between appellant and the unknown man did not in itself render the CI's tip unreliable and did not leave the officers without probable cause to arrest appellant.

Our analysis here is reinforced by the fact that Officers Nunez and Howser did not arrest appellant at the moment she pulled into the WaWa station consistent with the CI's tip. Instead, the officers set up surveillance posts on either side of the WaWa station and observed the suspicious movements of appellant and the unknown man. Therefore, the CI's tip did not comprise the entirety of the basis for probable cause here. <u>Contra</u> <u>Byrd</u>, 50 Va. App. at 547, 651 S.E.2d at 417 (recounting that the insufficient probable cause showing was based entirely on the informant's tip). Instead, the officers here arrested appellant not only on the basis of the CI's reliable tip, but also after observing appellant's suspicious behavior and interactions with the unknown man at the WaWa station.

As the Virginia Supreme Court recently noted in <u>Buhrman v. Commonwealth</u>, 275 Va. 501, 659 S.E.2d 325 (2008):

> In <u>Taylor v. Commonwealth</u>, 222 Va. 816, 284 S.E.2d 833 (1981), we held that "probable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." <u>Id.</u> at 820, 284 S.E.2d at 836 (citations omitted). Therefore, in determining whether an officer had sufficient probable cause to make an arrest, courts should focus upon "what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." <u>Hollis v. Commonwealth</u>, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976).

<u>Id.</u> at 505, 659 S.E.2d at 327.

Here, Officer Howser observed appellant pull into the WaWa gas station as predicted by the CI. The officer observed appellant meet the unknown man inside the store and walk to the back of the store with him. The officer observed that appellant and the unknown man left the store at different times, that the man initially walked past appellant's car before walking back to the car, and that the man placed his hand inside the driver's side door for ten seconds before leaving. Furthermore, Officer Howser observed that appellant *never pumped any gas* despite parking right next to a gas pump. Viewing the totality of the circumstances in this case, it was not unreasonable for a trained officer to believe that appellant went to the WaWa station for a criminal purpose. Therefore, Officer Howser's observations, when considered in the context of the reasonably trustworthy information provided by the CI to Officer Nunez, were sufficient to warrant a person of reasonable caution to believe that an offense had been committed. See Taylor, 222 Va. at 820, 284 S.E.2d at 836.

Consequently, we hold that probable cause existed to arrest appellant. The trial court's denial of appellant's motion to suppress the drug evidence seized during the search incident to the arrest of appellant, therefore, was proper.

### III. CONCLUSION

For the foregoing reasons, we affirm appellant's conviction for possession of cocaine.

Affirmed.