689 S.E.2d 769

**Malachi Antonio BYRD**

v.

**COMMONWEALTH of Virginia.**

**Record No. 2197–08–1.**

Court of Appeals of Virginia,
Chesapeake.

March 9, 2010.

744

T. Gregory Evans, Assistant Public Defender (Office of the Public Defender, on brief), for appellant.

Jennifer C. Williamson, Assistant Attorney General (William C. Mims, Attorney General, on brief), for appellee.

Present: HUMPHREYS, McCLANAHAN, JJ., and WILLIS, S.J.

HUMPHREYS, Judge.

Malachi Antonio Byrd ("appellant") was convicted at a bench trial of possession of a Schedule I or II controlled substance, in violation of Code § 18.2–250; and possession of a firearm by a convicted felon, in violation of Code § 18.2–308.2. On appeal, appellant contends that the trial court erred when it denied his motion to suppress the evidence obtained from the search of the vehicle and appellant because the police lacked probable cause for the search. Appellant asserts that

the confidential informant's tip lacked the detail necessary to support probable cause. Appellant also argues that the trial court erred when it refused to strike the charge of possession of a firearm by a convicted felon. For the following reasons, we agree that the trial court erred in denying appellant's motion to suppress; however, the motion to strike issue is not properly before this Court because it is procedurally defaulted.

## BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the Commonwealth. *Commonwealth·v. Hudson*, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Parks v. Commonwealth*, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (citation omitted). So viewed, the evidence is as follows.

At the suppression hearing held on January 8, 2008, Virginia Beach Police Officer William Canada ("Canada") testified that on March 27, 2007, at approximately 1:00 a.m., he received a tip from a reliable confidential informant ("CI") that in approximately thirty (30) minutes a drug transaction involving crack cocaine was going to take place at the Harris Teeter grocery store at 29th and Arctic Boulevard in Virginia Beach. Canada stated that the CI told him a green four-door vehicle, driven by a black female with a black male passenger, would pull into the Harris Teeter parking lot where the drug transaction would take place. The CI further told him that the male in the car had a gun. At the suppression hearing, Canada testified that he did not know the basis of the CI's knowledge with regard to this tip.

After receiving the information from the CI, Canada, Officers Jason Gregory ("Gregory"), and Robert Ernest ("Ernest") set up surveillance at the Harris Teeter. Gregory testified at the suppression hearing that Canada told them the

CI stated a green Dodge with a black female driver and black male passenger would drive to the Harris Teeter, the passenger would get out, conduct a drug transaction, get back in the car, and they would leave. He further told them that the drug would be crack cocaine and the passenger would be armed.

The officers were in position at Harris Teeter ten minutes after receiving the tip. They waited for approximately twenty minutes when they saw a green four-door Dodge pull into the parking lot with a black female driver and a black male passenger. The driver pulled into a parking space, and after one minute the passenger got out and walked directly into the Harris Teeter. Approximately two minutes later, the passenger walked out of the store without anything in his hands and returned to the vehicle. They then drove out of the parking lot. The officers did not see what occurred in the store, nor did they see any visible purchases on the man.

Based on the information from the CI and the officers' observation, Canada stated that they stopped the vehicle on 28th Street and removed appellant, the black male passenger, and the female driver from the car. The officers detained the individuals and placed them in separate police cars. They then searched the passenger compartment and found a loaded Jimenez nine-millimeter handgun in the glove compartment. The female driver claimed ownership of the weapon.

After discovering the gun, Gregory took appellant to the Second Precinct police station where he read him his rights in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant then waived his right to remain silent and to consult with counsel and indicated that he wanted to speak with Gregory. Appellant informed Gregory that even though his girlfriend owned the gun, his fingerprints would be found on it because he had moved it the previous night. After Gregory interviewed appellant at the police station, Ernest transferred him to the detective bureau where appellant was wanted on a different matter. Upon arriving at the First Precinct, Ernest took him to an interview room, and based on department policy had him remove his

pants because he had a pair of shorts on underneath them. As appellant pulled off his pants, a small baggie containing a white substance fell to the floor underneath appellant's pant leg. Ernest testified that there had been nothing on the floor when they entered the room and that he saw the baggie fall to the floor. The certificate of analysis entered into evidence showed that the baggie contained .27 gram of cocaine.

Canada testified that the Harris Teeter area was known as a high crime drug area in which several narcotics arrests had been made. With regard to the CI, Canada testified that he knew the identity of the CI, and had worked with this CI for about eighteen (18) months with the last six (6) months of that time being after the CI had completed the process of becoming a confidential informant. Canada stated that the information the CI provided during this time was reliable, never found to be false, involved narcotics, and had resulted in "over twelve search warrants, seizures of large quantities of money, drugs, firearms, people with arrest warrants."

The trial court denied the motion to suppress on the grounds that there was a sufficient basis for the stop based on the CI's information and the totality of the circumstances. Specifically, the trial court stated that this case was distinguishable from *Russell v. Commonwealth*, 33 Va.App. 604, 535 S.E.2d 699 (2000), in that the information in this case was sufficient because the informant had been a source of twelve previous search warrants that resulted in seizure of significant quantities of drugs, weapons, and money, the accurate description of the vehicle and the occupants of the vehicle, and the time and place it was going to stop. The trial judge further observed that he did not think the officers needed to physically observe the criminal transaction before they made a stop.

At trial, the Commonwealth admitted, without objection, a copy of California Penal Code § 12021.1 along with a conviction order from the Superior Court of California, San Diego County, finding appellant guilty of possession of a firearm by a

person previously convicted of a specified violent crime in violation of California Penal Code § 12021.1(a).

This appeal followed.

## ANALYSIS

### I. Motion to Suppress

■ Appellant contends that the police lacked probable cause to search him and the car based on the CI's tip and, thus, the evidence found in the stop and flowing from the subsequent arrest should be suppressed.[1] When reviewing a trial court's denial of a motion to suppress, this Court considers the evidence given at both the suppression hearing and the trial, *DePriest v. Commonwealth*, 4 Va.App. 577, 583, 359 S.E.2d 540, 542–43 (1987), and views the evidence "in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences fairly deducible from it," *Sabo v. Commonwealth*, 38 Va.App. 63, 69, 561 S.E.2d 761, 764 (2002) (citing *Commonwealth v. Grimstead*, 12 Va.App. 1066, 1067, 407 S.E.2d 47, 48 (1991)).

■ This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *McGee v. Commonwealth*, 25 Va.App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (quoting *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)). However, "we review *de novo* the trial court's application of legal standards . . . to the particular facts of the case." *McCracken v. Commonwealth*, 39 Va.App. 254, 258, 572 S.E.2d 493, 495 (2002) (citing *Ornelas*, 517 U.S. at 699, 116 S.Ct. at 1663). " 'Ultimate questions of reasonable suspicion and probable cause . . . involve questions of both law and fact and are reviewed *de novo* on appeal.' " *Ramey v. Commonwealth*, 35 Va.App. 624, 628, 547 S.E.2d 519, 521 (2001) (quot-

---

1. Appellant does not contend that there was no reasonable suspicion for the stop or that his arrest lacked probable cause.

ing *Neal v. Commonwealth*, 27 Va.App. 233, 237, 498 S.E.2d 422, 424 (1998)). "The burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error." *McCain v. Commonwealth*, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001) (citing *Fore v. Commonwealth*, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

"The Fourth Amendment ... protects 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' " *Johnson v. Commonwealth*, 26 Va.App. 674, 682, 496 S.E.2d 143, 147 (1998) (citation omitted). "[A] 'highly intrusive, full-scale ...' search[ ] ... must be based upon probable cause to believe that a crime has been committed by the suspect." *McGee*, 25 Va.App. at 198, 487 S.E.2d at 261 (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)). If probable cause exists for a search, then a warrantless search of an automobile is permitted under the "automobile exception," and it does "not contravene the Warrant Clause of the Fourth Amendment." *California v. Acevedo*, 500 U.S. 565, 569, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619 (1991) (citing *Carroll v. United States*, 267 U.S. 132, 158–59, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925)). The reasons for this exception are the ready mobility of the vehicle as well as the fact that " 'the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.' " *California v. Carney*, 471 U.S. 386, 391, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406 (1985) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976)). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996).

"[P]robable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Jones v. Commonwealth*, 277 Va. 171, 178,

670 S.E.2d 727, 731 (2009) (quoting *United States v. Grubbs*, 547 U.S. 90, 95, 126 S.Ct. 1494, 1499, 164 L.Ed.2d 195 (2006)). An officer has probable cause sufficient for a warrantless search if " 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949) (quoting *Carroll*, 267 U.S. at 162, 45 S.Ct. at 288).

 In this case, a confidential informant was the basis for the police officer's probable cause. "When a confidential informant provides the basis for probable cause, there are two considerations that are particularly relevant to our analysis: (1) the veracity or reliability of the informant and (2) the informant's basis of knowledge." *Byrd v. Commonwealth*, 50 Va.App. 542, 551, 651 S.E.2d 414, 419 (2007) (citing *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983)).

> The reliability and basis of knowledge of an informant are not independent elements that must be proved in order to find probable cause, *Polston v. Commonwealth*, 24 Va.App. 738, 744, 485 S.E.2d 632, 635 (1997), but instead " 'are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided proba-ble-cause determinations: a deficiency in one may be com-pensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.' " *Byrd*, 50 Va.App. at 552, 651 S.E.2d at 419 (quoting *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329).

*Robinson v. Commonwealth*, 53 Va.App. 732, 738, 675 S.E.2d 206, 209 (2009).

 "In 'applying the totality-of-the-circumstances analy-sis,' the Supreme Court has 'consistently recognized the value of corroboration of details of an informant's tip by indepen-dent police work.' " *McGuire v. Commonwealth*, 31 Va.App. 584, 594, 525 S.E.2d 43, 48 (2000) (quoting *Gates*, 462 U.S. at

241, 103 S.Ct. at 2334). "[A]n officer 'may rely upon information received through an informant, rather than upon direct observations,' so long as the officer has reasonable grounds to believe the informant's statement is true." *Id.* at 594–95, 525 S.E.2d at 48 (quoting *Gates,* 462 U.S. at 242, 103 S.Ct. at 2334).

In this case, the trial court found that the information provided by the CI and his history of being a source were sufficient to support the stop and search of the vehicle and its occupants. Canada had worked with the CI in the present case for six months, and the CI had provided information prior to the instance in this case that had proved to be reliable. Canada stated that the CI had never provided false information in the time that he worked with him. Further, the information provided in the past by the CI had resulted in twelve search warrants that produced evidence of drugs, weapons, and money.

The reliability of the CI in this case is similar to the reliability of the informant in *Byrd,* 50 Va.App. at 552, 651 S.E.2d at 419. In that case, the informant had provided information to the officer that resulted in one search warrant, three arrests, and six recoveries of narcotics, and the information provided was never inaccurate. *Id.* Therefore, we agree that the record in this case supports the trial court's conclusion that the CI in this case was reliable.

Although we agree with the trial court's determination that the CI was reliable, our analysis does not end there, for we must also consider the CI's basis of knowledge of the purported criminal activity. *See id.* ("Nevertheless, although the confidential informant used . . . was reliable, the informant did not provide any basis for his knowledge of [defendant's] criminal activity.").[2]

---

2. While the dissent correctly notes that the United States Supreme Court "abandoned the 'two-prong test' established in *Aguilar* [*v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964),] and *Spinelli* [*v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969),] in

"The basis of an informant's tip must be 'something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.' *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969). For example, a confidential informant may provide the basis of his knowledge by claiming that he personally observed the crime that he is reporting. *See e.g., Askew [v. Commonwealth]*, 38 Va.App. [718,] 720, 568 S.E.2d [403,] 405 [ (2002) ] (confidential informant personally observed the defendant in possession of narcotics); *Lester v. Commonwealth*, 30 Va.App. 495, 501–02, 518 S.E.2d 318, 321 (1999) (confidential informant personally observed the defendant in possession of stolen property); *Boyd v. Commonwealth*, 12 Va.App. 179, 182, 402 S.E.2d 914, 916 (1991) (anonymous informant had personally observed the defendant in possession of cocaine). In other cases, although the informant does not explicitly claim personal knowledge, his tip may be 'so detailed as to raise an inference either of personal observation or of acquisition of the information in a reliable way.' *McGuire*, 31 Va.App. at 595, 525 S.E.2d at 49."

*Robinson*, 53 Va.App. at 739, 675 S.E.2d at 210 (quoting *Byrd*, 50 Va.App. at 552–53, 651 S.E.2d at 419–20). Appellant contends that the informant provided no basis as to how the CI obtained the information he provided and that the information corroborated by the officers was general information. We agree.

---

favor of 'the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations,' *Gates*, 462 U.S. at 233–38, 103 S.Ct. at 2329–32," it nevertheless overlooks the fact that while the United States Supreme Court did away with the "two-prong test," both the reliability and basis of knowledge factors are still considered in looking at the "totality-of-the-circumstances" in order to determine whether probable cause existed based solely on a confidential informant's tip to conduct a search. *See Robinson*, 53 Va.App. at 737–38, 675 S.E.2d at 209; *Byrd*, 50 Va.App. at 551–52, 651 S.E.2d at 419; *Askew v. Commonwealth*, 38 Va.App. 718, 723, 568 S.E.2d 403, 406 (2002); *McGuire*, 31 Va.App. at 593–95, 525 S.E.2d at 48–49; *Russell*, 33 Va.App. at 610–11, 535 S.E.2d at 702.

As we noted in *Byrd*, *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), is the classic case where an informant's basis of knowledge is not given, yet this deficiency is overcome by corroboration of extensive detail given by the informant. *Byrd*, 50 Va.App. at 553, 651 S.E.2d at 420 (citing *Gates*, 462 U.S. at 242, 103 S.Ct. at 2334) The informant in *Draper* told the officers that Draper would be carrying heroin when he arrived in Denver on a train from Chicago on one of two specific days. *Draper*, 358 U.S. at 309, 79 S.Ct. at 331. The informant specifically described Draper's physical appearance, what he would be wearing, the specific bag he would be carrying, and that he "walked real fast." *Id.* When the officers arrested Draper, he had just stepped off a train in Denver that had arrived from Chicago on one of the two specified dates, was dressed exactly as the informant said he would be, and was walking fast. *Id.* at 310, 79 S.Ct. at 331. The Court in *Draper* concluded that the police had probable cause to arrest him even though the officer did not witness the accomplishment of the mission because the officer was able to verify that Draper arrived when predicted, had the exact physical characteristics, was dressed exactly as described, and was walking quickly. *Id.* at 313–14, 79 S.Ct. at 333–34.

Like the informant in *Draper*, the CI in this case did not state that he was personally observing the activity nor did he provide detailed information sufficient " 'to raise an inference . . . of acquisition of the information in a reliable way.' " *Robinson*, 53 Va.App. at 739, 675 S.E.2d at 210 (quoting *Byrd*, 50 Va.App. at 553, 651 S.E.2d at 420). However, unlike the informant in *Draper*, the information that the CI gave in this case was not " 'accurate and detailed predictions of future events' " demonstrating " 'personal or "inside" knowledge of the suspect's activities.' " *Id.* at 740, 675 S.E.2d at 210 (quoting *Byrd*, 50 Va.App. at 554, 651 S.E.2d at 420). The information the CI provided merely included the appellant's gender and race, the location of the appellant as the passenger, the color and make of the vehicle, the destination, and an estimate that it would take place in the next thirty minutes. The CI predicted that the appellant would be armed and that the drug

transaction would take place in the parking lot. The officers were able to corroborate the generic description of the vehicle, individuals, and location prior to stopping the car; however, they did not observe appellant engage in any conduct corroborating the existence of a drug transaction. While the officers are not required to witness the transaction if they have verified all the information provided in order to have probable cause, *see Robinson*, 53 Va.App. at 740, 675 S.E.2d at 210–11 (citing *Draper*, 358 U.S. at 313, 79 S.Ct. at 333), the information provided in this instance was not so detailed as to provide the inference that the CI obtained the information in a reliable way or that he had inside or personal knowledge of the appellant's activities.

"Because the tip provided no basis of knowledge, the question of probable cause turns on whether, under the totality of the circumstances, the evidence showing the informant's reliability is strong enough to overcome the lack of evidence regarding the informant's basis of knowledge." *Byrd*, 50 Va.App. at 554, 651 S.E.2d at 420.

> [I]f "a particular informant is known for the *unusual* reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge [will] not serve as an absolute bar to a finding of probable cause based on his tip."

*Id.* (quoting *Askew*, 38 Va.App. at 723, 568 S.E.2d at 406) (emphasis in original).

In *Askew*, this Court held that the informant's "undisputed history of reliability" compensated for his lack of establishing his basis of knowledge. *Askew*, 38 Va.App. at 724, 568 S.E.2d at 406. The informant in *Askew* had been a paid informant for three years, provided information that led to over 200 arrests, and had never given unreliable information. *Id.* at 720, 568 S.E.2d at 404–05. In *Byrd*, this Court held that the informant did not have such unusual reliability so as to compensate for his failure of setting forth his basis of reliability. *Byrd*, 50 Va.App. at 555, 651 S.E.2d at 421. The informant in *Byrd* had provided information on six prior occasions, but the record did

not show what the prior occasions were in order for the court to determine whether or not he was unusually reliable. *Id.* In addition the court noted that there was no evidence regarding the quality and quantity of the information provided or whether the previous information had ever led to a conviction. *Id.*

> While it is not necessary that an informant have as extensive a track record as the informant in *Askew,* merely providing accurate information on six previous occasions does not make an informant so reliable that he can simply be taken at his word without providing some basis of knowledge for any accusation he makes.

*Id.*

 This case is similar to *Byrd* in that the CI does not have such an unusual history of reliability that it compensates for his failure to set forth the basis of his knowledge for the information he relayed to Canada. The record in this case shows that the CI provided information to the police that led to "over twelve search warrants, seizures of large quantities of money, drugs, firearms, people with arrest warrants," yet it does not inform as to how many of those search warrants led to actual seizure of evidence or whether the information led to convictions.[3] In addition, while the record shows that the information provided by the CI generally related to narcotics, it does not demonstrate the quantity or quality of the information provided on those previous occasions.

---

**3.** The dissent contends that this latter factor does not discount the informant's degree of reliability. While the record is not clear whether the past information provided led to convictions, whether it did is certainly a consideration in a totality-of-the-circumstances analysis in determining whether or not the informant was so unusually reliable as to overcome the necessity to establish an adequate basis of knowledge. *See Byrd,* 50 Va.App. at 555, 651 S.E.2d at 421 ("There is no evidence that any information previously provided by the informant had ever led to a conviction."). The dissent's citation to LaFave for the proposition of when "an informant's track record is sufficiently established" overlooks the constitutional requirement that what is needed in the present situation, absent any evidence of the informant's basis of knowledge, is a showing that the CI was "unusually reliable," not that he was just simply reliable.

Under the totality of the circumstances, we hold that the CI's tip in this case did not provide the officers with probable cause. The CI did not provide his basis of knowledge, nor did he provide such detailed information that it could be inferred he had personal knowledge of the criminal activity. Finally, his history of reliability was not so unusual on its own to support a finding of probable cause. For these reasons, we hold that under the totality of the circumstances, the police officers lacked probable cause for the warrantless search of the vehicle and appellant.[4]

---

4. The dissent ignores this Court's previous application and analysis of the law in *Byrd*, *Robinson*, and *Askew* to arrive at its conclusion to the contrary while simultaneously claiming that we have applied a standard that is not "flexible." Specifically, the dissent asserts that we have "undertaken an overly 'legalistic' review of the facts presented, and, in the process, applied an excessively 'rigorous definition of probable cause,' all in contravention to the teaching of *Gates* and its progeny." (Citations omitted.) While we agree with the dissent that the informant had been reliable in the past, presumably on those prior occasions the law was properly applied and any search warrant issued on those occasions was the result of a judicial official reviewing *both* the informant's track record for providing accurate information and also whether the information was acquired by him firsthand or through third parties who may or may not share the same level of reliability.

The thrust of our disagreement with the dissent is that where the dissent would apparently end its analysis with the trial court's factual finding that the CI had been reliable in the past and hold that this fact alone supports probable cause, we cannot ignore the remaining constitutional requirement that the totality of the circumstances to establish probable cause must also consider the basis of the informant's knowledge in conjunction with his level of reliability. Since any competent police officer, before applying for a search warrant, would likely ask an informant for details he would be expected to supply to a magistrate or testify to in a suppression hearing including how the informant knows the incriminating information he is passing along, presumably the basis for this informant's knowledge could have been easily established by the prosecution—it simply was not. It may be that the Commonwealth can remedy this deficiency if it is inclined to proceed further, but whether such is the case is not properly a part of our analysis. Thus, we have merely followed the approach used by this Court in examining *both* the informant's reliability and his basis of knowledge in light of the totality of the circumstances in determining whether a CI's tip provides a sufficient basis for probable cause. *See Robinson*, 53 Va.App. at 738–40, 675 S.E.2d at 209–11; *Byrd*, 50 Va.App. at 552–55, 651 S.E.2d at 419–21; *Askew*, 38 Va.App. at 723–24, 568 S.E.2d at 406; *McGuire*, 31

## II. Motion to Strike

Appellant contends that the trial court erred when it did not strike the charge of possession of a firearm by a convicted felon because the California statute is not substantially similar to the Virginia statute. Because we remand for a new trial based upon the trial court's error with regard to the suppression issue, we must address appellant's sufficiency argument to avoid any potential double jeopardy issue on retrial. *See Sanchez v. Commonwealth,* 41 Va.App. 319, 334, 585 S.E.2d 327, 334 (2003), *rev'd on other grounds,* 268 Va. 161, 167, 597 S.E.2d 197, 200 (2004) (noting that double jeopardy principles require a sufficiency analysis even though reversing defendant's conviction on other grounds); *see also Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978) (establishing that a full sufficiency analysis is required to satisfy the mandate of the Double Jeopardy Clause); *Parsons v. Commonwealth,* 32 Va.App. 576, 581, 529 S.E.2d 810, 812–13 (2000) (recognizing that a sufficiency analysis must be addressed in cases remanded for other error in order to satisfy the Double Jeopardy Clause); *Timbers v. Commonwealth,* 28 Va.App. 187, 201–02, 503 S.E.2d 233, 240 (1998) (discussing sufficiency of the evidence due to requirements of Double Jeopardy Clause).

The appellant was convicted of possession of a firearm in violation of Code § 18.2–308.2 after he had been convicted of a violent felony as defined in Code § 17.1–805. Code § 17.1–805 lists as a violent felony a violation of Code § 18.2–308.2 (which makes it unlawful for a convicted felon to possess a firearm), or any substantially similar offense under the laws of any state. In 2006, appellant was convicted in the Superior Court of California, County of San Diego, of possession of a firearm by a person previously convicted of a specified violent crime under California Penal Code § 12021.1(a). The Commonwealth introduced the California conviction into evidence without objection by the appellant.

---

Va.App. at 595–96, 525 S.E.2d at 49; *Russell,* 33 Va.App. at 613–15, 535 S.E.2d at 703–04.

 "No ruling of the trial court ... will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except of good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. The purpose of " 'Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.' " *Neal v. Commonwealth,* 15 Va.App. 416, 422, 425 S.E.2d 521, 525 (1992) (quoting *Martin v. Commonwealth,* 13 Va.App. 524, 530, 414 S.E.2d 401, 404 (1992)).

> "The ends of justice exception is narrow and is to be used sparingly," and only when a trial court error is "clear, substantial and material." *Brown v. Commonwealth,* 8 Va.App. 126, 132, 380 S.E.2d 8, 11 (1989). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Id.* (citing *Mounce v. Commonwealth,* 4 Va.App. 433, 436, 357 S.E.2d 742, 744 (1987)). "In examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." *Lewis v. Commonwealth,* 43 Va.App. 126, 134, 596 S.E.2d 542, 546 (2004), *rev'd on other grounds,* 269 Va. 209, 608 S.E.2d at 907 (2005). *See also Michaels v. Commonwealth,* 32 Va.App. 601, 529 S.E.2d 822 (2000); *Redman v. Commonwealth,* 25 Va.App. 215, 221, 487 S.E.2d 269, 272 (1997).

*Tooke v. Commonwealth,* 47 Va.App. 759, 764–65, 627 S.E.2d 533, 536 (2006).

The appellant never raised the issue of the lack of substantially similar statutes in the trial court despite the fact that the appropriate time to do so would have been when the California court conviction order was tendered as an exhibit. Thus, because a contemporaneous objection was not made and a ruling obtained, appellant is precluded from raising it for the first time on appeal. Although appellant asks this Court to

apply the ends of justice exception, the application of this exception is not warranted here because the record does not show " 'affirmative evidence of innocence or lack of a criminal offense.' " *Id.* at 765, 627 S.E.2d at 536 (citing *Lewis,* 43 Va.App. at 134, 596 S.E.2d at 546). Moreover, except for any double jeopardy implications involved in the procedural posture of this appeal, the issue is otherwise rendered moot by our remand to the trial court and we need not address it further.

## CONCLUSION

For these reasons, we hold that the trial court erred in denying appellant's motion to suppress the evidence seized from the car and his person, and we remand for a new trial or other proceedings not inconsistent with this opinion. We further hold that the motion to strike was procedurally defaulted and not properly before this Court.

*Reversed and remanded.*

McCLANAHAN, J., concurring, in part, and dissenting, in part.

In reversing the trial court's determination that probable cause for searching Byrd's vehicle was established, the majority concludes that: (a) the informant "was reliable," but was just not reliable enough; (b) the informant's tip was "detailed," but was just not "so detailed" as to support an inference that it was obtained in a "reliable way" through "inside personal knowledge of [Byrd's] activities"; and (c) the fact there was no direct evidence of the informant's basis of knowledge regarding Byrd's activities further undermined the informant's reliability. I disagree with all three conclusions, and would affirm the trial court's denial of Byrd's suppression motion, in light of the totality of the circumstances presented to the police at the time they conducted the search. I do agree, however, with the majority's analysis of Byrd's alternative challenge to his firearm conviction to the extent the majority concludes that his argument is procedurally barred.

## I.

It has long been well established that " 'information received through an informant, rather than upon [a police officer's] direct observations,' " may provide probable cause for a search "so long as the officer has reasonable grounds to believe that the [information] is true." *McGuire v. Commonwealth,* 31 Va.App. 584, 594–95, 525 S.E.2d 43, 48 (2000) (quoting *Illinois v. Gates,* 462 U.S. 213, 242, 103 S.Ct. 2317, 2334, 76 L.Ed.2d 527 (1983)); *see Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Wright v. Commonwealth,* 222 Va. 188, 278 S.E.2d 849 (1981). In *Gates,* the controlling authority in this area of Fourth Amendment law, the United States Supreme Court abandoned the "two-prong test" established in *Aguilar* and *Spinelli* ("direct[ing] analysis into two largely independent channels—the informant's 'veracity' or 'reliability' and his 'basis of knowledge' "), in favor of "the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations." *Gates,* 462 U.S. at 233–38, 103 S.Ct. at 2329–32. The *Gates* Court recognized in adopting this approach that "probable cause determinations involve diverse factual scenarios that are 'not readily, or even usefully, reduced to a neat set of legal rules.' " *United States v. White,* 549 F.3d 946, 949 (4th Cir. 2008) (quoting *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329); *see Derr v. Commonwealth,* 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991) (stating that the Court in *Gates* "reject[ed] a hypertechnical, rigid, and legalistic analysis of probable cause determinations"). In *Robinson v. Commonwealth,* 53 Va.App. 732, 738, 675 S.E.2d 206, 210 (2009), this Court recently reaffirmed that we are not bound by any "technical standard concerning informant reliability." Rather, the "totality of the circumstances" approach under *Gates* " 'permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending' the informant's tip." *Id.* (quoting *Gates,* 462 U.S. at 234, 103 S.Ct. at 2330). The *Gates* Court characterized this approach as the establishment of a "flexible, common-sense standard ... [that] serves the

purpose of the Fourth Amendment's probable-cause requirement." *Gates,* 462 U.S. at 239, 103 S.Ct. at 2333.

*Gates* thus directs courts to assess whether officers acting on an informant's tip had probable cause "by examining all of the facts known to officers leading up to the [search and/or] arrest, and then asking 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer,' amount to probable cause." *White,* 549 F.3d at 950 (quoting *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911 (1996)). In short, the facts "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329; *see McGuire,* 31 Va.App. at 595, 525 S.E.2d at 48–49 ("*Gates* opened the door for police officers to establish the credibility of an informer in a variety of ways . . . ." (citation and internal quotation marks omitted)).[5]

---

5. We thus said in *Robinson,* more specifically, that "neither *Askew* [*v. Commonwealth,* 38 Va.App. 718, 568 S.E.2d 403 (2002),*]* nor any other controlling case law"—meaning *Byrd v. Commonwealth,* 50 Va.App. 542, 651 S.E.2d 414 (2007), as well—establishes any "technical standard concerning informant reliability," and we declined the invitation to create any such standard in *Robinson. Robinson,* 53 Va.App. at 738, 675 S.E.2d at 210. To have done so, of course, would have been in contravention to *Gates.* The majority is, therefore, mistaken in relying on *Askew, Byrd,* and *Robinson* as support for its assertion that there was a "constitutional requirement" that the confidential informant in the instant case had to be "unusually reliable."

The origin of the phrase "unusually reliable" in the current context is *Gates,* where the Supreme Court was simply illustrating, by way of example, the flexible nature of the totality-of-the-circumstances approach to assessing probable cause, in contrast to the rigid two part *Aguilar–Spinelli* test. After explaining that any number of factors, either alone or in combination, may serve as satisfactory "indicia of reliability" for a informant's tip, the Court stated:

If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip.

*Gates,* 462 U.S. at 233, 103 S.Ct. at 2329–30. In any event, the *Gates* Court went on to make clear that a case-by-case review of the totality of the circumstances, "which permits a balanced assessment of the rela-

Probable cause, in turn, as the *Gates* Court reiterated and as the term implies, "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates,* 462 U.S. at 245 n. 13, 103 S.Ct. at 2335 n. 13; *see Jones v. Commonwealth,* 277 Va. 171, 178, 670 S.E.2d 727, 731 (2009) (" '[P]robable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." ' " (quoting *United States v. Grubbs,* 547 U.S. 90, 95, 126 S.Ct. 1494, 1499, 164 L.Ed.2d 195 (2006))); *Slayton v. Commonwealth,* 41 Va.App. 101, 106, 582 S.E.2d 448, 450 (2003) ("Probable cause relies on a 'flexible, common-sense standard' " and "does not 'demand any showing that such a belief [regarding criminal activity] be correct or more likely true than false.' " (quoting *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983))). "By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens' demands." *Gates,* 462 U.S. at 245 n. 13, 103 S.Ct. at 2335 n. 13.

## II.

The majority in this case has undertaken an overly "legalistic" review of the facts presented, *Derr,* 242 Va. at 421, 410 S.E.2d at 666, and, in the process, applied an excessively "rigorous definition of probable cause," *Gates,* 462 U.S. at 245 n. 13, 103 S.Ct. at 2335 n. 13, all in contravention to the teaching of *Gates* and its progeny. On the facts here presented, I would hold the trial court did not err in finding the police had probable cause for the warrantless search of Byrd's vehicle and his subsequent arrest, which resulted in his conviction for illegal possession of both drugs and a firearm as a convicted felon.

---

tive weights *of all the various indicia* of reliability (and unreliability) attending an informant's tip," is still the ultimate test. *Id.* at 234, 103 S.Ct. at 2330 (emphasis added).

At the suppression hearing, Virginia Beach Police Officer William Canada testified that at approximately 1:00 a.m., he received information from a reliable informant that a drug transaction involving crack cocaine was going to take place in approximately 30 minutes in the parking lot of the Harris Teeter grocery store located at 29th and Arctic Boulevard in Virginia Beach. The informant told Canada that a green four-door vehicle occupied by two people, a black male and a black female, was going to pull into the parking lot. The informant also told Canada that the female would be driving the vehicle and that the male passenger would be armed with a firearm. The grocery store, according to Canada, was located in what was known to be a high drug crime area where numerous narcotics arrests had been made.

Canada testified that he had worked with the informant for approximately eighteen months. More specifically, the informant had been a "confidential informant" for six months prior to the subject incident; but he had also been "a source of information" for a year prior to completing the process of becoming a confidential informant. Canada stated that during that time the informant had "provided very reliable information," which generally involved narcotics related criminal activity. This information "result[ed] in over twelve search warrants, seizures of large quantities of money, drugs, [and] firearms," along with a number of arrests. Furthermore, Canada indicated that all of the information he had received from the informant over the eighteen-month period had proven to be reliable.

As to the subject incident, consistent with the informant's tip, Canada and two other officers observed a green four-door vehicle pull into the Harris Teeter parking lot at about 1:35 a.m. A black female was driving the vehicle, and a black male, later identified as Byrd, was in the passenger seat. The driver parked the car and, approximately a minute later, the officers saw Byrd exit the vehicle and enter the grocery store—this latter development being in variance with what the informant had expected, having indicated that a drug transaction would take place in the parking lot. Less than two

minutes later, however, Byrd exited the store empty-handed. He then got into the waiting vehicle, and the two suspects drove away.

The officers subsequently stopped and searched the vehicle in which Byrd was a passenger and recovered the loaded nine-millimeter handgun that led to Byrd's arrest for possession of a firearm as a convicted felon. Then at the police station, one of the officers discovered that Byrd was carrying a bag of cocaine on his person, resulting in his drug charge.

In view of the totality of the circumstances presented to the police at the time they stopped and searched Byrd's vehicle, I do not believe this Court can conclude, as a matter of law, that the police lacked probable cause to conduct the search. That is, I do not agree with the majority that we can say, under the circumstances, no reasonable police officer could have believed there was a fair probability that criminal activity was afoot.

Upon reviewing similar circumstances involving a confidential informant, even in certain instances where the police had no prior history with the informant, courts in a number of other jurisdictions have concluded that the police had probable cause for executing a warrantless search and/or arrest. *See, e.g., United States v. Gagnon*, 373 F.3d 230, 232–38 (2d Cir.2004) (informant, previously unknown to the police, but cooperating after being apprehended for possession of a large quantity of marijuana, advised that Gagnon would be arriving at a certain date, time, and location, driving a tractor trailer with the name "Lanfort" on the side of the trailer, for the purpose of receiving the shipment of marijuana located in the informant's trailer); *United States v. Marchena–Borjas*, 209 F.3d 698, 699–700 (8th Cir.2000) (a reliable informant advised that a named Hispanic male was in possession of methamphetamine at a certain trailer park, and would be delivering it at a certain time to a certain location, driving a silver Oldsmobile mini-van with Nebraska license plates); *United States v. Miller*, 925 F.2d 695, 696–700 (4th Cir.1991) (informant, previously unknown to the police but providing information to gain leniency on pending charges, advised that Miller would be

arriving at the bus station on a certain day wearing blue jeans and a blouse, carrying a brown tote bag, and would be in possession of drugs); *Williams v. Commonwealth,* 147 S.W.3d 1, 6–8 (Ky.2004) (reliable informant advised police that a black male, who would be in possession of crack cocaine, would be driving a blue El Camino to a certain apartment complex and picking up another black male); *State v. Abbott,* 277 Kan. 161, 83 P.3d 794, 796–98 (2004) (reliable informant advised that Abbott would be traveling in a two-tone van to a certain location, giving the date and time, to purchase methamphetamine); *State v. Munson,* 594 N.W.2d 128, 132–37 (Minn.1999) (reliable informant advised that "in 1 1/2 to 2 hours a rented, green 1996 'Bronco or Jeep type vehicle' with Minnesota license plates" would arrive at a certain location occupied by three African–American males, and the vehicle would contain a large quantity of crack cocaine); *Commonwealth v. Bakoian,* 412 Mass. 295, 588 N.E.2d 667, 668–72 (1992) (reliable informant advised that Bakoian and another named individual, traveling in a black Thunderbird with a beige roof bearing a Massachusetts license plate, would "soon" arrive at a certain location with a shipment of heroin).

## III.

While concluding the police did not have probable cause to conduct the search of Byrd's vehicle in this case, the majority acknowledges that the confidential informant "was reliable." The majority nevertheless discounts the informant's degree of reliability because there was no testimony that the informant's tips to the police over the period of approximately eighteen months—all of which were reliable—ever resulted in a conviction. Yet, what we do know is that the informant's tips resulted in the execution of twelve search warrants, seizures of large quantities of money, drugs, and firearms, and a number of arrests, which was more than sufficient to establish the informant as a highly reliable source of information. As stated in *United States v. Johnson,* 351 F.3d 254, 259 (6th Cir.2003), even if "previous successful searches based on [the informant's] statements had not led to successful prosecutions,

this would by itself not have thrown any doubt on the reliability or truthfulness of the informant," as the "mere fact that contraband was discovered where he claimed it was going to be discovered is sufficient indicia of his reliability." *See United States v. Angulo–Lopez,* 791 F.2d 1394, 1397 (9th Cir.1986) ("If the informant has provided accurate information on past occasions, he may be presumed trustworthy on subsequent occasions," and "the inference of trustworthiness is even stronger" if "the information provided in the past involved the same type of criminal activity as the current information." (citations omitted)).

> As Professor LaFave explains:
>
> Courts have consistently held that an informant's track record is sufficiently established by a showing (i) that on one or more prior occasions the informant indicated that a certain object, usually narcotics, but sometimes such other items as stolen property, counterfeit money, or even the body of a homicide victim are concealed at a certain place, and (ii) the information was verified as true by a search which uncovered the specified items at the place indicated. This is a sound result, for the fact that evidence was turned up which the informant indicated would be turned up bears very directly upon the informant's credibility.... [A]s a general proposition such a showing may be more convincing than an assertion that the informer's prior information led to convictions, for—except in those cases where conviction follows from the single fact of a defendant's possession of a certain object, which the informant may have previously asserted as a fact—a conviction is likely to follow from an accumulation of several facts above and beyond those communicated by the informant.

2 Wayne R. LaFave, *Search and Seizure* § 3.3(b), at 116 (4th ed. 2004) (footnotes and internal quotation marks omitted); *see Sexton v. State,* 397 A.2d 540, 546 (Del.1979) ("The test for determining the reliability of an undisclosed informant is not his record in aiding arrests or convictions, but whether his information has ever been verified in the past."); *People v. Arnold,* 186 Colo. 372, 527 P.2d 806, 809 (1974) (explaining it

would be "an undue restriction" on the police to require that the informant's information led to convictions because "[t]he information previously furnished may be in connection with cases not yet tried or may relate to prosecutions dismissed for reasons unrelated to the reliability of the informant's information").[6]

The majority also concludes that the confidential informant did not provide Officer Canada with enough detail to infer that the informant had "personal knowledge of [Byrd's] criminal activity." To the contrary, the informant provided critical details "relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted," *Gates*, 462 U.S. at 245, 103 S.Ct. at 2335–36; and the Supreme Court has "consistently recognized the value of corroboration of [such] details of an informant's tip by independent police work" in establishing probable cause. *Id.* at 241, 103 S.Ct. at 2334.

As outlined above, thirty-five minutes before Byrd's arrival at the Harris Teeter grocery store located at 29th and Arctic Boulevard in Virginia Beach, the informant accurately advised Canada that Byrd, identified as a black male, would be arriving at that location in approximately thirty minutes, that he would be a passenger in a green four-door vehicle, and that he would be accompanied by a black female, who would be driving the vehicle. The informant also advised that a drug transaction would be taking place in the grocery store parking lot. Canada and two other officers then corroborated all but the latter piece of information, as Byrd quickly entered and exited the grocery store, empty-handed, rather than engaging in a transaction in the grocery store parking lot. The fact that there was a discrepancy with this latter piece of information does not mean that the police should have concluded the

---

**6.** Thus, even if we assume *arguendo* that the informant in this case had to be "unusually reliable" for probable cause to have been established, as the majority contends, the informant should certainly be viewed in that light due to the informant's eighteen-month similar history of providing reliable information to Officer Canada regarding significant criminal activity.

tip was unreliable. *See United States v. Diallo*, 29 F.3d 23, 26 (1st Cir.1994) (rejecting contention that informant's tip was unreliable because he had predicted "there would be three men in a red Toyota [who were going in engage in a drug transaction on a particular night] when in actuality there were four men in two cars" and declaring that "[a] tipster need not deliver an ironclad case to the authorities on the proverbial silver platter" (citation and internal quotation marks omitted)); *United States v. Morales*, 923 F.2d 621, 625 (8th Cir.1991) ("While Morales was not wearing a black T-shirt at the time of arrest as the informant had predicted, he did arrive at the depot at the appointed time in a red pick-up with a white topper accompanied by a woman."). Once again, we are to apply a totality-of-the-circumstances analysis, viewed from the perspective of a reasonable police officer.

Furthermore, the fact that "all of the corroborat[ed] detail ... was of entirely innocent activity" does not diminish its significance. *Gates*, 462 U.S. at 245 n. 13, 103 S.Ct. at 2335 n. 13. "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.; see Morales*, 923 F.2d at 625 ("[T]he corroboration of minor, innocent details can suffice to establish probable cause." (citation and internal quotation marks omitted)). Thus, when the officers evaluated the seemingly innocent details of the corroborating information in conjunction with the informant's history of veracity, they could have reasonably believed that the uncorroborated portion of the informant's tip, i.e., Byrd's predicted illegal activity, was also correct. "[Because] an informant is right about some things, he is more probably right about other facts, ... including the claim regarding ... criminal activity." *Gates*, 462 U.S. at 244, 103 S.Ct. at 2335 (internal citation and quotation marks omitted); *see Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (discussed at length in *Gates*, wherein the Court described *Draper* as the "classic case on the value of corroborative efforts of police officers," *Gates*, 462 U.S. at 242, 103 S.Ct. at 2334). In

addition, as we pointed out in *Ramey v. Commonwealth*, 35 Va.App. 624, 631, 547 S.E.2d 519, 523 (2001) (quoting *Alabama v. White*, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990)), " '[b]ecause only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to have access to reliable information about that individual's illegal activities."

Finally, in light of the totality of the circumstances here presented—including the informant's eighteen-month history of providing accurate information to the police; the informant's prediction of Byrd's future behavior; the police's near-total corroboration of that prediction; the fact that the subject location was known to police as a high drug crime area where numerous narcotics arrests had been made; and the fact that Byrd quickly entered and exited the grocery store empty-handed—I disagree with the majority in terms of the negative weight it attaches to the fact there was no direct evidence of the informant's basis of knowledge regarding Byrd's activities. If there is a "strong showing" of "some other indicia of [the informant's] reliability," there need not be any indicia of the informant's basis of knowledge. *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329. As the Supreme Court explained in *Gates*, consistent with the "totality-of-the-circumstances analysis," "a deficiency in [the showing of either the informant's 'veracity' or his 'basis of knowledge'] may be compensated for, in determining the overall reliability of a tip, by a *strong showing as to the other*, or by *some other indicia of reliability.*" *Id.* (emphasis added); *see* 2 LaFave *supra* § 3.3(f), at 190 (The *Gates* Court "specifically approved of corroboration as a means of overcoming the lack of a more direct showing of an informant's basis of knowledge.").

### IV.

For these reasons, I would affirm the decision of the trial court in denying Byrd's motion to suppress the evidence obtained from the search of his vehicle (the firearm) and the custodial search of his person (the cocaine) on the grounds

that the police had probable cause to search the vehicle, which led to his arrest and custodial search. I would also hold that Byrd's alternative argument challenging his firearm conviction is barred under Rule 5A:18.