# CIRCUIT COURT OF THE CITY OF MARTINSVILLE

Commonwealth of Virginia

v.

Tracy Lynn Johnston

March 22, 2011

Case Nos. CR10-577, CR10-578, CR10-579, CR10-580

By Judge G. Carter Greer

The defendant stands indicted with possession of cocaine with intent to distribute, possession of phentermine with intent to distribute, possession of zolpidem with intent to distribute, and possession of alprazolam with intent to distribute, all in violation of Va. Code § 18.2-248. The defendant has filed a motion to suppress certain evidence that was discovered during a warrantless search of the defendant's automobile. On February 28, 2011, the court conducted an *ore tenus* hearing, at which the court heard the testimony of Quincy Jones, Lt. Marshall Thomas, and officer Jeremy Purvis on behalf of the Commonwealth. The defendant presented no evidence. The court has considered the authorities submitted by the parties and now issues this decision.

The evidence revealed as follows. Beginning in the spring of 2007 and continuing for approximately one year, Quincy Jones worked as a paid confidential informant for the Martinsville Police Department. It was Jones' responsibility to purchase illegal drugs so that the police could build cases against suspected drug dealers. Jones worked under close police supervision, and he assisted the police in successfully making twenty to thirty cases. During the course of Jones' service as an informant, the Commonwealth did not lose a case in which Jones was involved, although there was no evidence as to how many convictions resulted from Jones' assistance. Lt. Thomas, who was Jones' principal supervisor, regarded Jones as very reliable. Surprisingly, Jones never had to testify in court until

the instant case, so no factfinder has ever had to weigh his credibility until now.

In June 2008, Jones and the defendant were married. Jones did not tell his wife about his former undercover work, either before or after they were married, and there was no evidence that the defendant knew anything about it. Within two years, they began to have marital problems to such an extent that each one told the other to leave the marital residence; however, apparently neither Jones nor the defendant left the home at that time. Jones, who had not worked as an informant in over two years, still kept in touch with Lt. Thomas. In the summer of 2010, Jones called Lt. Thomas and told him that he (Jones) suspected that his wife was having an affair with another man and that she was transporting illegal drugs to Danville and Roanoke. Lt. Thomas responded that "whenever he knew for sure that she was going to Danville or Roanoke and she was making a delivery to call . . . back." (Tr. at 4.)

On the evening of September 20, 2010, the defendant left the residence by herself and did not return until early the next morning, at which time Jones and the defendant got into a "discussion about what [Jones] thought she was doing." (Tr. at 5.) At approximately 6:00 a.m. Jones sent Lt. Thomas a text message stating that the defendant was going to Roanoke and that he had seen what looked like cocaine and blue pills in her vehicle. Lt. Thomas then called Jones, who told Lt. Thomas what he (Jones) had seen in the defendant's car. Shortly thereafter, Jones called Lt. Thomas back and told him that the defendant had moved the drugs to the front passenger side under the floor mat and that she would be leaving the residence with the drugs in the car. Jones also gave Lt. Thomas the make, model, and tag number of the defendant's vehicle. Lt. Thomas asked Jones to "stay in the area," but Jones stated that he had to go to work.

At 7:05 on the morning of September 21st, Lt. Thomas began surveillance of the defendant's residence, and he saw the defendant enter a Toyota matching the description given him by Jones. A young black male got into the vehicle on the passenger's side. The defendant drove away from the residence at 8:05 a.m., and Lt. Thomas followed in an unmarked vehicle. Lt. Thomas notified officer Purvis, a uniformed patrolman, of the situation and asked him to stop the defendant's vehicle. Officer Purvis, who was driving a marked police cruiser, got behind the defendant and stopped her in the parking lot of the Midget Market, which is located on Clearview Drive in the City. Lt. Thomas parked his vehicle a short distance away. Officer Purvis approached the defendant, who was still seated in her car, and asked her to get out because Lt. Thomas wanted to speak with her. The defendant stepped out, and officer Purvis accompanied her to the rear of the vehicle. Lt. Thomas then walked up to the defendant and told her that he had received a report that there were illegal drugs in her car and that he would need to search the vehicle. The defendant started

crying and screaming that Jones had set her up, but, after calming down, the defendant consented to the search of her vehicle. Lt. Thomas testified that the defendant got upset *before* he told her of the reason for the stop and that he had to calm her down in order to speak with her. This testimony was contrary to that of officer Purvis, who testified that the defendant got upset *after* Lt. Thomas told her of the reason for the stop. The court finds that Lt. Thomas is suffering from an imperfect memory and that officer Purvis' version is correct. During the search, Lt. Thomas found under the floor mat on the passenger side a yellow glove that contained what appeared to be crack cocaine rocks, various pills, and some blue powder.

Citing *Davis v. Commonwealth*, 37 Va. App. 421, 559 S.E.2d 374 (2002), the defendant argues that the search and seizure of her vehicle violated the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Virginia Constitution on the ground that "the officers did not possess an arrest warrant for the Defendant and did not stop the vehicle for a traffic violation, investigation, or other lawful purpose." Motion to Suppress, ¶ 4. Relying upon *Adams v. Williams*, 407 U.S. 143 (1972), and *Alabama v. White*, 496 U.S. 325 (1990), the Commonwealth counters that "[t]he stop was lawful, given the informant's previous relationship with Lt. Thomas and the information that the informant provided. . . ." Response to Defendant's Motion To Suppress, ¶ 6. Furthermore, the Commonwealth contends "[t]hat the defendant gave consent for the vehicle she was operating to be searched." *Id.*, ¶ 7.

The constitutionality of the stop of the defendant's vehicle depends upon whether the tip provided by Jones, a known informant who had proven to be reliable in the past, sufficed to establish reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1 (1968) (officer may make investigatory stop if he has reasonable suspicion based on articulable facts that criminal activity is "afoot"); *Delaware v. Prouse*, 440 U.S. 648 (1979) (officer having reasonable suspicion may make *Terry* stop of automobile). In *Adams v. Williams, supra*, the Supreme Court of the United States, holding that a tip from a known informant justified a *Terry* stop and frisk, stated as follows:

> [W]e believe that [the policeman] acted justifiably in responding to his informant's tip. The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, under Connecticut law, the informant might have been subject to immediate arrest for making a false complaint had [the policeman's] investigation proved the tip incorrect. Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient

for a narcotics arrest or search warrant [citations omitted], the information carried enough indicia of reliability to justify the officer's forcible stop of Williams.

*Id*. at 146-47. In the case at bar, the court finds that the stop of the defendant's vehicle was constitutional on the ground that, as a result of Jones' tip, Lt. Thomas had a reasonable suspicion that criminal activity was "afoot."

That the stop passes constitutional muster does not end the inquiry, for Lt. Thomas conducted a warrantless search of the defendant's vehicle. "Searches conducted without prior judicial approval are *per se* unreasonable under the Fourth Amendment, subject to exceptions allowed when exigencies require warrantless searches." *McCrary v. Commonwealth*, 228 Va. 219, 227, 321 S.E.2d 637 (1984). *See also Fore v. Commonwealth*, 220 Va. 1007, 265 S.E.2d 729 (1980). One such exception is when an officer is given consent to search.

In arguing that the search was lawful on the basis of consent, the Commonwealth, in effect, concedes that Lt. Thomas did not have probable cause to search, and the court agrees after considerable reflection on the matter, in spite of the court's comments at the hearing. The court recognizes that a tip from a known informant can establish probable cause under certain circumstances. *See Askew v. Commonwealth*, 38 Va. App. 718, 568 S.E.2d 403 (2002), and *Robinson v. Commonwealth*, 53 Va. App. 732, 675 S.E.2d 206 (2009). However, the court is of the opinion that no reasonable police officer could have regarded Jones' story without skepticism, given that the defendant is Jones' wife, and that Jones and the defendant are having marital troubles, of which Lt. Thomas was fully aware. In fact, Lt. Thomas himself had doubts about Jones' veracity as demonstrated by the officer's arranging for Jones to record conversations with the defendant *after* Lt. Thomas searched the vehicle in order to corroborate Jones' story. The court finds that Jones' testimony at the hearing was not credible.

"As a general rule, 'a search authorized by consent is wholly valid'." *Kyer v. Commonwealth*, 45 Va. App. 473, 483, 612 S.E.2d 213 (2005), quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). "When relying upon consent as the justification for a search, the Commonwealth must prove, based upon the totality of the circumstances, that the consent was freely and voluntarily given." *Hughes v. Commonwealth*, 31 Va. App. 447, 454, 524 S.E.2d 155 (2000).

When the police announce to a suspect that they have received information that the suspect is engaging in specific criminal activity, that factor is significant in determining whether consent to search was voluntarily given. In *McGee v. Commonwealth*, 25 Va. App. 193, 487 S.E.2d 259 (1997), the police received a tip from an anonymous informant that a black male wearing a white t-shirt, black shorts, and white tennis shoes was selling drugs on a street corner in Richmond. Two officers approached the

defendant, who matched the above description, and one of them told him that they had received information that the defendant was selling drugs. The officer asked to pat down the defendant, who then extended his arms with his hands clenched. The officer then asked the defendant to open his hands, which contained money, a torn ziplock bag and "a little piece of white substance." During a search incident to arrest, the officer found twenty-five bags containing crack cocaine. The defendant filed a motion to suppress, which the trial court denied, and the defendant was convicted of possession of cocaine with intent to distribute. On appeal, the Court of Appeals reversed, holding that the defendant's consent to search was the result of an illegal detention. In so holding, the Court of Appeals stated that:

> [w]hen the police expressly inform an individual that they have received information that the individual is engaging in criminal activity, the police "convey a message that compliance with their requests is required," [citation omitted] and "that failure to cooperate would lead only to formal detention.". . . . Thus, when a police officer confronts a person and informs the individual that he or she has been specifically identified as a suspect in a particular crime which the officer is investigating, that fact is significant among the "totality of the circumstances" to determine whether a reasonable person would feel free to leave. When confronted with an accusation from police, such as, "we know you are selling drugs from this location, let us search you," no reasonable person would feel free to leave.

*Id.* at 200 (quoting *Florida v. Bostwick,* 501 U.S. 429, 435 (1991), and *United States v. Berry,* 670 F.2d 583, 597 (5th Cir. 1982)).

In the case at bar, the court finds that the Commonwealth has failed to prove that the defendant's consent was voluntary. The court is of the opinion that, in view of Lt. Thomas' accusation that the defendant was transporting illegal drugs in her vehicle, no reasonable person in the position of the defendant would have felt free to withhold consent. Therefore, the motion to suppress is granted, and the court shall enter an appropriate order.